## Delaware County Trust, Safe Deposit & Title Insurance Company *v.* Haser, Appellant.

199        17
f  24 SC ³570

199        17
31 SC ¹ 36
31 SC ¹ 42

199      17
225    ²231

*Promissory notes—Accommodation maker—Surety.*

The rights and liabilities of accommodation makers of negotiable instruments are fixed by the position in which their names appear on the instrument and where a note is executed by an accommodation maker, he assumes a primary liability and makes the indebtedness his own. The effect of his signing the note as maker is to make his liability the same as if the payee had, on the delivery of the note, handed the money to the accommodation maker and he had given it to the real debtor, and the fact

that the money was delivered directly to the real debtor cannot change the maker's liability on the obligation. His position on the paper determines the character of his responsibility on the note to the holder.

The fact, that a person is an accommodation maker of a promissory note, and so known to the lender of the money who is a holder for value, does not give the maker the rights of an indorser or surety or change his responsibility for the indebtedness from what it would be as a maker for value, and he can discharge the indebtedness evidenced by the note only as a maker for value could do, and the giving of time to the real debtor cannot avail the accommodation maker as a defense in an action on the note.

One who signs a note as maker, although he does it merely for the accommodation of the payee or the indorser, thereby pledges himself in the situation of principal, and will not be allowed to escape the consequences of his action by subsequently alleging that he was but a surety. Time given the payee or indorser will not operate to release him from his obligation. These principles are equally applicable where the note is made for the accommodation of a third person.

Application was made to a trust company to lend a sum of money to a singing society for the purpose of paying claims arising from the construction of its building. The trust company agreed to lend the money upon receiving a promissory note to be signed by ten of the members of the society for the amount of the loan, taking at the same time a second mortgage upon the building also as security for the loan. The note signed by ten members was received by the trust company as well as the second mortgage, and when the money was paid out the trust company took the promissory note of the singing society which was discounted on the books of the trust company. This note was renewed from time to time, the society paying the discount in advance. The second mortgage having proven worthless, the trust company resorted to the note made by the ten members for payment of the loan. *Held*, that the individual makers of the first note were principals and not sureties, and that the extension of the note of the society and subsequent renewals thereof did not operate to their relief.

Argued Feb. 13, 1901. Appeal, No. 28, Jan. T., 1901, by F. X. Haser, from judgment of C. P. Delaware Co., Dec. T., 1898, No. 5, on verdict for plaintiff in case of the Delaware County Trust, Safe Deposit and Title Insurance Company v. John P. Volkhardt, George Wiegand, Emil O. Haas, David Traub and F. X. Haser et al. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on a promissory note. Before JOHNSON, P. J.

The facts are stated at length in the opinion of the Supreme Court.

The court directed a verdict for plaintiff subject to points of

law reserved.   The jury returned a verdict for plaintiff, on which the court subsequently entered judgment.

*Error assigned* among others was in entering judgment on the verdict.

*A. B. Geary*, for appellant.—The appellant was surety and the Harmonia Singing Society was the principal, and this relation continued throughout.

If the appellant had never waived or been estopped from asserting his protection as surety then it is clear that the time which elapsed before demand is unreasonable in its extent: Bolles on Negotiable and Nonnegotiable Instruments, p. 106; McKinney v. Crawford, 8 S. & R. 350; Brenzer v. Wightman, 7 W. & S. 264; Patterson v. Todd, 18 Pa. 426; Brandt on Suretyship (2d ed.), sec. 38; McQuesten v. Noyes, 6 N. H. 19.

Where the principal debtor signs a note as maker to his creditor and the surety signs a bond as obligor, the execution of such a bond by the surety does not extinguish any of his rights as such surety: Brandt on Suretyship (2d ed.), sec. 38; Watriss v. Pierce, 32 N. H. 560.

*O. B. Dickinson*, for appellee.—The appellant in the case at bar was not an indorser, but a maker, and the fact that he was, and was known to the plaintiff to be, an accommodation maker, did not entitle him to notice of dishonor, or to write into his contract the special features of a contract of indorsement: Coon v. Caffrey, 6 Luz. L. Reg. 77; Bank of Montgomery Co. v. Walker, 9 S. & R. 237; Barbour v. Fullerton, 36 Pa. 105.

An accommodation maker is liable to the holder who took the note with knowledge: Walker v. Bank of Montgomery Co., 12 S. & R. 382; Lord v. Ocean Bank, 20 Pa. 384; Penna. Safe Deposit & Trust Co. v. Stetson, 175 Pa. 164; Smith v. Hine, 179 Pa. 260.

Although as between themselves and in fact the maker of a note may be surety for the indorser or for someone else as between maker and holder, the maker is always the maker (or principal) and cannot gainsay the fact: Bank of Montgomery Co. v. Walker, 9 S. & R. 234; Farmers' Nat. Bank v. Marshall, 9 Pa. Superior Ct. 621.

The holder of a note does not release the maker by giving time to the indorser, even though the real relation of the parties was known to the holder for the reason that though in fact a surety the maker is always the principal with respect to the holder : White v. Hopkins, 3 W. & S. 99 ; Lewis v. Hanchman,. 2 Pa. 416 ; Goswiler's Est., 3 P. & W. 203 ; Stephens v. Monongahela Nat. Bank, 88 Pa. 160 ; Zane v. Kennedy, 73 Pa. 193 ; Hagey v. Hill, 75 Pa. 108 ; Calvert v. Good, 95 Pa. 65.

Taking a new note, though payable at a future time, is neither payment of the old or giving of time : Weakly v. Bell, 9 Watts, 273 ; McCartney v. Kipp, 171 Pa. 644 ; Shaffstall v. McDaniel, 152 Pa. 602 ; Collins v. Busch, 191 Pa. 552 ; Kemmerer's Appeal, 102 Pa. 558.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1901 :

The Harmonia Singing Society of Chester applied to the Delaware County Trust, Safe Deposit and Title Insurance Company, the appellee, for a loan to assist it in the erection of a proposed building. The loan was granted on June 8, 1893, but was not taken out by the society. On December 5, 1893, the application was renewed, and a loan of $5,000 was awarded upon the condition that the society procure a responsible party to furnish $15,000 on a first mortgage, and that the loan be secured by a note for $5,000, signed by not less than ten members of the society, and also by a mortgage of like amount, second to the $15,000 mortgage, to be held as collateral for the note and also as protection for the members of the society signing the note. The money was not to be paid out on the loan until the society's building was completed and freed from all liens and claims so that the mortgages might be the first and second liens.

The loan was accepted on the terms on which it had been granted. The appellant and nine other members of the society executed and delivered to the plaintiff the following note, which was signed by the appellant and his codefendants, and is the note in suit :

" $5000.             " CHESTER, PA., December 13, 1893.

" One month after demand we or either of us promise to pay to the order of the Delaware County Trust, Safe Deposit and

Title Insurance Company five thousand dollars without defalcation."

On January 10, 1894, the society directed the insurance company " to pay the proceeds of the note dated December 13, 1893 " to Bunyea and McCray or their order, when the Harmonia Singing Society Hall had been completed.

On July 13, 1894, the mortgages required by the terms of the loan were executed, and on July 25, 1894, the $15,000 mortgage was recorded, and on July 26, 1894, the $5,000 mortgage was recorded.   The proceeds of the $15,000 mortgage and of the $5,000 furnished on the note, less $80.00 discount, were disbursed by the insurance company on account of the building erected by the society.   This building seems to have been completed in the latter part of July, 1894, when, according to the terms of the loan and the order of the society of January 10, 1894, the money was to be paid by the insurance company. But before the money was paid by the insurance company, it took another note from the society itself, dated July 26, 1894, for $5,000, payable three months after date, which was duly discounted and the proceeds credited to the singing society. This note was entered and carried on the books of the insurance company with the statement that the insurance company held as collateral a second mortgage and a note signed by ten members.   It was renewed from time to time until February 12, 1898, without any payments except the successive discounts, and each renewal was made after the preceding note fell due.

The $15,000 mortgage was foreclosed in April, 1898, the property was sold for $150, and nothing was realized from the sale applicable to the second mortgage which was given as collateral security for the payment of the note in suit.

On April 20, 1898, demand for the payment of the note was made by the plaintiff on the appellant and the other makers which was refused, and on December 5, of the same year this action was brought.

On the trial of the cause in the court below, the defendants claimed that they were relieved from liability on the note for the reason that they were to be regarded as sureties although they appeared on the note as makers, and that as sureties the claim could not be enforced against them because demand for the payment of the note was not made in a reasonable time,

and the acceptance of the note of the society on July 26, 1894, and its subsequent renewals, without notice to them, relieved them from liability. The learned court below, however, directed a verdict for the plaintiffs, and judgment having been entered, F. X. Haser, one of the defendants, took this appeal.

It is contended here by the appellant that the note in suit and on which he is one of the makers, was taken as collateral security for the note of July 26, 1894, on which the society was the maker, and that the relation of principal and surety between the plaintiff and the defendants was thus established and continued throughout the transaction. The appellant's counsel concede that this is the controlling question in the case and that its solution will determine the appellant's liability on the note in suit.

It clearly appears that the note in suit was given to secure a loan made by the plaintiff to the Harmonia Singing Society. It received the money and the makers of the note were undoubtedly accommodation makers. Their credit was given the society that it might secure the loan from the plaintiff, and that meant that it might be employed for the purpose without restriction as to the manner of its use: Smith v. Hine, 179 Pa. 263. The obligation of the appellant and his codefendants could have been assumed by them in various ways. Their liability to the plaintiff might have been as mortgagors, as indorsers, as makers of a judgment note, as sureties, or as makers of a promissory note direct to the plaintiff. It is apparent that the liability of the defendants would have been different in each case and that the right of the plaintiff to enforce its claim would depend on the liability assumed. In other words, the rights and liabilities of the defendants were fixed by the position in which their names appeared on the instrument given the plaintiff to secure its loan. In the present case it was determined by the parties that the loan should be secured by the promissory note of the defendants payable to the plaintiff, secured by a second mortgage on the property of the society. The appellant executed this note as a maker. He thus assumed a primary liability and made the indebtedness his own. The effect of his action and his liability on the note were the same as if the plaintiff had, on the delivery of the note, handed the money to the appellant and he had given it to the society. The

fact that the money was delivered directly to the society cannot change the appellant's liability on the obligation. His position on the paper determines the character of his responsibility on the note to the plaintiff. Nor does the fact that he was an accommodation maker and so known to the plaintiff, who is a holder for value, give him the rights of an indorser or surety or change his responsibility for the indebtedness from what it would be as a maker for value.

Occupying then the position of a maker on the note in suit, the appellant was a principal debtor as between him and the plaintiff, and he can discharge the indebtedness, evidenced by the note, only as a maker for value could do. It is contended, however, by the appellant that he is released from his liability by the plaintiff's acceptance of the society's note of July 26, 1894, and its several renewals. The extension of time thus given the society for a good consideration would doubtless have that effect if the appellant were a surety for the principal debtor; but as he was an accommodation maker of the note in suit, and did not occupy the position of surety to the plaintiff, the giving of time by the plaintiff to the society on the note and its renewals, cannot avail the appellant as a defense in this action. Hence when it is once determined that the appellant sustains to the payee the relation of maker or principal in the note, his liability on the contract is established, and his only relief is payment.

In Bank of Montgomery County v. Walker, 9 S. & R. 229, an action was brought against Thomas Walker, the maker of a promissory note payable to Walker & George (Enoch Walker and Thomas George), by whom it was indorsed to the plaintiff bank which discounted it and paid the money to Walker & George. The directors of the bank knew that Thomas Walker was an accommodation maker when they discounted the note. From time to time thereafter for one year, Walker & George paid the discount on the note, and credit was given them without consulting the maker of the note. The defendant (Thomas Walker), contended that he was discharged from liability on the note in consequence of time being given to Walker & George, he being only a surety, and having received no notice of the indulgence to them. It was, however, determined otherwise. Mr. Justice DUNCAN, delivering the opinion, says: " The

respective rights and liabilities of the parties, taking the note by what it represented itself to be, were then fixed. It is clear, that nothing but satisfaction of the debt, or absolute renunciation of it, could discharge the maker. Time given to the maker might discharge the indorser; notice of nonpayment not being given to him might have the same effect; but time given to the indorser could not discharge the maker. Notice of nonpayment by the indorser was not necessary; it was his business to look to the payment. . . . The man who, to serve his friend, lends his name, as his debtor, in order that he may obtain money on that evidence of debt, cannot complain of it as a grievance, that when this purpose is answered, the law will consider him just in the character he has assumed; if maker, to be treated as maker; if indorser, as indorser. As he chose to be introduced into the world by the name and in the character of maker, he must be content to pass through, in all its stages, under that name, and he cannot, at his pleasure, cast it off, and deny it to any who has given credit to the paper on his assumed name and character; to such person he is bound, by every obligation of justice and morality, to sustain the character he has held himself out to be; he shall not be permitted to allege that this was an imposition, to which he gave his name, nor to gainsay its reality, by proof that it was a fiction." The case was again in this court on another writ of error (12 S. & R. 382), when Chief Justice TILGHMAN, speaking for the court, said: "We assume this broad principle, that the man who makes a promissory note, for the purpose of negotiation, must stand to it; he has placed himself in the situation of principal, and shall not afterwards escape, by alleging that he was but a surety. Although the plaintiffs knew that the defendant received on value from Walker & George, the payees, yet they knew also that it was his choice to serve his friends, by placing himself in the front of a negotiable instrument, and they had a right to suppose, that he was willing to abide the consequences. They were therefore under no obligation to give him notice . . . . of any indulgence which they might think proper to give his friends, the indorsers; it was his business to make inquiry into these things. He knew that he had not paid the note himself, and if he wanted to know whether the indorsers had paid it, or received indulgence from the bank, he should have sought for

information." In Penn Safe Deposit and Trust Company v. Stetson, 175 Pa. 164, Mr. Justice WILLIAMS, delivering the opinion of the court, says : " An accommodation note is a loan of the credit of the maker to the payee which he may use as freely and with the same effect as to the maker as he could use a note given for a full consideration. It is no defense for the maker of such a note when sued by the indorsee to aver the character of the note, or knowledge of its character by the indorsee. If the note in suit had been given for the accommodation of the Spring Garden Bank and the fact had been known to the trust company when it took it in exchange for its deposit of money in the bank, it would not constitute a defense in this action."

The acceptor of a bill of exchange sustains the same relation to the payee that the maker of a note does to his payee. It has accordingly been held that it is no defense to the acceptor of a bill of exchange that the holder has since received another bill from the drawer payable at a subsequent date for a part of the amount, and given time to him for the balance, though the bill was accepted for the accommodation of the drawer and that was known to the holder when he received the bill: White v. Hopkins, 3 W. & S. 99 ; Lewis v. Hanchman, 2 Pa. 416.

These cases have since been followed in this court, and it may now be considered as well settled in this state that one who signs a note as maker, though he does it merely for the accommodation of the payee or the indorser, thereby places himself in the situation of a principal, and will not be allowed to escape the consequences of his action by subsequently alleging that he was but a surety. Time given the payee or indorser, therefore, will not operate to release him from his obligation. These principles are equally applicable where the note is made for the accommodation of a third person, as in the present case. The relation created by the maker is that of principal debtor, and his rights and liabilities are the same whether the accommodation is for the payee in the note or for a third person. The liability of the maker does not depend upon the person for whose accommodation the note is made, but upon the situation in which the maker has placed himself by assuming the position of a principal debtor.

Conceding that the renewals of the note of July 26, 1894, were extensions of the time of payment of the indebtedness, the liability of the makers of the note of December 13, 1893, is not affected whether that note be regarded as collateral security for the original debt or for the note of July 26, 1894. This arises from the fact that the liability of the maker of a promissory note, given as collateral security for a debt, is not affected by anything less than a discharge or release of the original debtor. His liability to the payee in the first instance is primary and absolute, and when the note is delivered by the payee or any subsequent holder as collateral, its character is not changed and the maker's contract is not altered when it is in the hands of the transferee. Hence an action may be brought on the note by the party who holds it as collateral and the amount recovered when it becomes due without first resorting for payment to the original debtor: Lishy v. O'Brien, 4 Watts, 141; Lazier v. Nevin, 3 West Va. 622. " That (collateral security) is, as I understand it," says Sergeant, J., in Lishy v. O'Brien, "a concurrent security, consisting of a promissory note, by which the promisors engaged to pay, without any condition or contingency, at the time mentioned, the amount of the note to the holder. . . . The object of giving a collateral security is to furnish another fund out of which the principal debts may be paid. . . . . The holder has a right to avail himself of these funds, by collecting the money on choses in action, when due, and applying it to the payment of his debt. . . . A promissory note delivered to the creditor as collateral security is his; and, if not paid when due, he may sue upon it. . . . I believe it has never been doubted, that if the debtor delivers to his creditor a promissory note of another for the payment of a sum of money at a certain day, as collateral security for a debt due or growing due by the debtor to the creditor, the latter is entitled to demand the contents of the note when due; and to sue for it if unpaid; nor has it been considered a defense to the promisor for noncompliance with his contract, that the note had thus been transferred. As to such promisor, it is res inter alios acta, with which he has nothing to do; his duty is to fulfill his contract by paying the legal holder."

The loan was made by the plaintiff to the society, as we have seen, in 1893, but the money was not to be disbursed until the

completion of the society's building, which was in July, 1894. There is nothing to show that it was the intention of the parties that the note of July 26, 1894, was accepted as a payment for the indebtedness. Without an agreement to that effect, it would not operate as such: Collins v. Busch, 191 Pa. 549. Hence it must be regarded only as an additional security for the original indebtedness.

No question arises here between the holder of a collateral security and his debtor as to the failure of the former to collect from the maker of the note by which the debtor has been injured by the delay.

We are of opinion that the appellant was not discharged from his liability on the note under the facts disclosed by the evidence, and therefore the court was right in directing a verdict for the plaintiff.

The assignments of error are overruled and the judgment is affirmed.