## Buhler Company, Appellant, *v.* Chidester.

*Negotiable instruments—Promissory notes—Defenses—Payment.*

1. Where in an action on an accommodation note, the defense was that the note had been given as collateral security for a preëxisting debt which had been paid, whereby the note was discharged, but where it clearly appeared from all the evidence that the note had been given in part payment of such indebtedness, and was regarded by all parties as a valid obligation for that purpose, a verdict should have been directed for the plaintiff.

2. In such case there is no merit in the contention that the terms of a subsequent composition made by the principal obligor with its

creditors extinguished plaintiff's claim, when the former's correspondence with plaintiff thereafter acknowledged the existence of the indebtedness.

Argued March 28, 1918.   Appeal, No. 44, Jan. T., 1918, by plaintiff, from judgment of C. P. No. 1, Philadelphia Co., Dec. T., 1913, No. 3226, for defendant in case of Edward E. Buhler Company v. David D. Chidester.  Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Reversed.

Assumpsit on a promissory note.   Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon.  Plaintiff appealed.

*Errors assigned* were answers to points, the refusal of the court to direct a verdict for the plaintiffs and to enter judgment for plaintiffs n. o. v.

*Joseph P. McCullen,* with him *James B. McGrane,* for appellant.—In the hands of the complainant the note was more than a mere pledge or a mere collateral security for indebtedness.  Plaintiff acquired the note in due course for conditional payment: Lishy v. O'Brien, 4 Watts 141; Depeau v. Waddington, 6 Wh. 220; Munn v. McDonald, 10 Watts 270; Work v. Kase, 34 Pa. 138.

Defendant being the principal debtor is not discharged by a composition of a holder with the accommodated endorser, but would equitably be entitled to the benefit of an actual payment by the latter or to any reduction in the debt for which the note was held: Love v. Brown, 38 Pa. 307.

*John C. Gilpin,* for appellee.—In the absence of an express agreement to the contrary, the presumption of law favors the creditor; that the note received by a creditor is held only as collateral security.

OPINION BY MR. CHIEF JUSTICE BROWN, July 17, 1918:

In April, 1911, the Atkinson Construction Company owed the Edward E. Buhler Company, the appellant, $9,-474.85. On the 26th of that month Davitt D. Chidester, the appellee, gave to his friend, George H. Atkinson, his promissory note for $3,000, payable to the order of Atkinson some days after date. The note was made for the accommodation of Atkinson, to enable him to give it to the Edward E. Buhler Company on account of the indebtedness to it of the Atkinson Construction Company, of which Atkinson was treasurer. He endorsed the note as an individual and as treasurer of the construction company, and delivered it to the appellant. It was renewed from time to time, and this action is on the last renewal, dated March 26, 1912. The defense made in the court below was that the original note had been given merely as security for a portion of the indebtedness of the Atkinson Construction Company to the appellant, and as the same had been paid or discharged, there was no further liability on it. This defense, allowed by the trial judge, prevailed in the court below, and from the judgment on the verdict in favor of the defendant, there is this appeal by the plaintiff, whose just contention is that, under the evidence, a verdict should have been directed in its favor.

The appellant dealt only with Atkinson in the negotiations which led up to his giving it the original note of the appellee, in April, 1911. From Atkinson's own testimony, which we quote at length as conclusive upon the appellee, who called him as his main witness, it most clearly appears that the note was endorsed to the appellant by Atkinson, as a partial payment of its claim against the construction company: "Q. We want to take up the situation as it existed when this original note was given, 1911? A. At that time we owed Buhler $9,000, which he said was more than they could carry without some assistance. I asked Mr. Chidester —— Q. What sort of business was the Buhler Company in, in 1911?

A. They were supplying us with cement on the railroad right-of-way contract—the cement business. Q. What work was the Atkinson Construction Company doing at that time? A. Doing the right-of-way work on what was called the Merritt & Gilbert contract of the New York, Westchester & Boston Railroad, out of Pelham, just outside of New York City. Q. This railroad was in process of construction at that time? A. Yes, a new railroad. Q. And you had become responsible to Buhler & Company to the extent of some $9,000 for cement? A. About that amount; yes—about $9,000, and I obtained this $3,000 accommodation note for them to use, to get money at their Sherman bank. Q. It enabled you; under your arrangement with Buhler, to carry your account? A. To get more cement, and carry the account; yes...... Q. Now you say that you gave the original note to Mr. Entwisle. Do you recall what was said between you and Mr. Entwisle when this note was to be given, as to why it was to be given, and what it was to be used for? A. Well, that the account was larger than it had been, and that they did not want to extend further credit unless we could make some payments on account. I got this note for them, and gave them $2,000 cash, as their statement shows at that time—$5,000 payment. Q. There is no question about the fact in your mind that this note was given to secure the cement bill owing them. (Objected to.) Q. Just tell us what if any relation there was between the delivery of this note and the payment of this cement bill. A. That note was given as a check would be given, to pay on account of that cement, that we had had delivered to us, and used in that railroad work." Egbert B. Entwisle, who was the credit man of the appellant at the time the note was given, testified that in April, 1911, the Atkinson Construction Company asked for additional credit, as they needed more material; that this was refused, because the account had reached a point which the company regarded as too large, and that, after refusing to extend further credit, Atkin-

son gave the company a check for $2,000 and the note of the appellee for $3,000, for which a credit was allowed on the account. In view of the foregoing, it is not to be questioned that the note was given to the appellant by Atkinson, clothed with authority from the appellee to do so, in payment of part of its claim against the construction company, and the appellee became absolutely liable on it, for "an accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name, to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party": Act of May 16, 1901, P. L. 194, Sec. 29.

It is further contended by the appellee that by the terms of a composition made by the Atkinson Construction Company with its creditors, September 24 or 25, 1912, the entire claim of the appellant against it at that time was extinguished; that Chidester, the maker of the note in suit, was thereby discharged, as it had been given merely as security for a portion of such indebtedness, and the appellant had agreed to surrender it to the construction company. If the alleged agreement to surrender the note depended upon the oral testimony in the case, that question would have been for the jury, but the written evidence showed conclusively not only that there had been no such agreement, but that the obligation of the appellee to the appellant was to remain unimpaired by the construction company's composition with its creditors. That composition left unpaid to the appellant a sum in excess of $3,000, the amount of the note in suit. It had been given to pay so much of the indebtedness of the construction company to the appellant, and the clear understanding between the appellant and Atkinson, as appears from the documentary evidence, at the time of the composition, was that the appellant should continue to hold the appellee liable upon its note. On the day of

the composition, George A. Nagle, Esq., attorney for the appellant, handed Atkinson a memorandum which read as follows: "September 24, 1912. This is to certify that the Edward E. Buhler Company will accept three renewals of four months each of note for $3,000 and interest, now held by them, signed by D. D. Chidester, with all endorsements on said renewals." Atkinson identified this paper on the trial and admitted that on October 5, 1912, he wrote the appellant as follows: "Your letter asking for three months' note of Davitt D. Chidester received. The memorandum that Mr. Nagle gave us reads that these notes are to be for four months each. Will this suit you just as well as a three months' note?" Phœbe M. Plack was one of the endorsers on the original note at the time it was delivered to the appellant, and it seems she declined to endorse a renewal, and afterwards, on October 18, 1912, Atkinson wrote as follows to the appellant: "Your letter of Oct. 14th, saying it will be necessary to have Mrs. Plack's endorsement on all notes received. Before writing you I had already sent a renewal note for Mrs. Plack's endorsement but I received word this morning that she has practically refused to endorse. I think I would like to have a talk with you or Mr. Nagle regarding this situation. Yours truly, G. H. Atkinson, L." Following this Atkinson wrote to appellant's attorney, on April 14, 1913: "Your letter of the 12th received this morning and your letter of the 7th was also received and sent to Mr. Chidester. There was no arrangement in the beginning to have any security put up for this note and Mr. Chidester objects to considering doing so, which is of course natural. When you are in New York next won't you please either telephone me or call in and see me?" On the 21st of the following month he wrote the attorney: "I think an arrangement can be made very soon to offer you a first mortgage on some lots in New Jersey. Would it suit you better to have Mrs. Plack's endorsement on this note if it can be had now?" In attempting to explain away at the trial the letters which

confronted him, showing conclusively that the liability of the appellee on the note in suit had not been affected at all by the construction company's composition with its creditors, Atkinson could only say: "I considered I had been fooled and I commenced to play for time, to stall him, and did everything I could do to get out of the place I was in, and I tried to make good myself to get Mr. Chidester out." How he expected to "get Mr. Chidester out" by what he had written passes understanding, for his letters certainly left the appellee just where he was before the composition. Nothing could be clearer than that, after the composition, the Atkinson Construction Company continued to recognize the note of the appellee (given by him to the construction company, through Atkinson, for its own uses) as a valid obligation in the hands of the appellant, taken by it in payment of a portion of the indebtedness of the construction company to it, which had not been inclined in the composition, and a verdict should, therefore, have been directed in favor of the plaintiff.

The ninth and tenth assignments of error are sustained, the judgment is reversed and the record is remitted with direction that judgment be entered for the plaintiff non obstante veredicto for $3,000, and the charges of protest and interest from June 26, 1912.