# Atchison et al., Appellants, *v.* United Presbyterian Board of Publication.

*Wills—Trusts and trustees—Contract of trustees—Publication of bills — Use of principal — Construction of contract by party — Estoppel—Agency.*

1. Where a grantor of a deed gives a large sum of money to trustees "for the publication and sale or gratuitous distribution of Bibles, not more than one-half which fund shall be used during my lifetime" with discretionary power in the trustees to act, and the trustees enter into a contract with a publishing board of a church denomination engaged in publishing and selling Bibles by which they appoint such board their agents to carry out the settlor's wishes and by which the board agrees to invest the sums paid to it by the trustees in stereotype plates of a distinctive type for printing Bibles, and to pay the trustees "at the rate of six per cent per annum in copies of the scriptures at wholesale prices to be distributed by the said board," the trustees cannot after the expiration of fifty years and after the stereotype plates have been completely used up, recover the principal of the sum paid over to the board under the agreement.

2. In such a case the deed contemplated the use of the corpus of the estate for the purposes of the trust; and the agreement between the trustees and the board created an agency.

3. There was no obligation on the part of the board to pay for the use of the plates after they were gone, and it was immaterial that the board used the plates for printing other Bibles; nor was it material that the parties for a time regarded the fund as a permanent liability.

4. It is only in case of doubt the parties' own construction of the contract can be resorted to.

5. There is no claim for an estoppel, where a party is not misled to his prejudice.

Argued October 14, 1919. Appeal, No. 31, Oct. T., 1919, by plaintiffs, from judgment of C. P. Allegheny Co., April T., 1917, No. 932, for defendant on case tried by the court without a jury, in suit of Thomas C. Atchison, John W. English, J. Allison Reed, Substituted Trustees under the Deed of Assignment of Alexander McElroy, v. United Presbyterian Board of Publication.

48 ATCHISON, Appel., *v.* UNITED P. BOARD OF PUB.

Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Affirmed.

Assumpsit to recover $10,380 with interest.

The case was tried by the court without a jury.

SHAFER, P. J., entered judgment for defendant. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant.

*J. B. Eichenauer,* of *Rose & Eichenauer,* with him *T. B. H. Brownlee,* for appellants.

*Albert H. Bell,* with him *J. Clarke Bell,* for appellee.

OPINION BY MR. JUSTICE WALLING, January 5, 1920:

This was an action of assumpsit tried before the court below without a jury.   On September 17, 1860, Alexander McElroy by deed assigned and delivered his entire estate to a board of three trustees, to be by them used and expended as therein directed.   After providing for the comfortable maintenance of the settlor and the payment of certain life annuities, the deed says, "I hereby direct that all that may remain of the amount thus assigned to said board of trustees after the foregoing provisions have been made shall be managed and used by said board as a fund for the publication and sale or gratuitous distribution of Bibles; not more than one-half of which fund, shall be so used during my lifetime, which half shall include the bond against the Steubenville and Indiana Railroad Co., the manner of making, disposing of and distributing said Bibles being left to the discretion of said board; provided only, that all copies of the Bible published shall be in fair and legible type and shall have bound together with each copy that metrical version of the psalms of David considered by said board of trustees to be the most true and faithful

to the original." The deed also authorized the board to fill vacancies and gives the trustees power to transfer the trust fund to the corporation of the United Presbyterian Church of North America, subject to same conditions and the additional one that the church appoint his trustees as its agents in carrying out the trust. Affiliated with that church was then and still is the defendant corporation, known as the United Presbyterian Board of Publication, and engaged in the publication and distribution of the Bible and other religious literature. In 1863 the trustees [first party] made a written agreement with the board of publication [second party] providing, inter alia, that "Said party of the first part agree to appoint the party of the second part their agents to carry out the object contemplated in the assignment of his estate to them, by said Alex. McElroy, viz: Circulating the Holy Scriptures together with the Psalms in Metre, in the version authorized by the United Presbyterian Church. Said party of the second part agree to accept said agency and faithfully carry out the object contemplated by said assignees, in pursuance thereof they will: First. Invest any sum or sums of money received from said assignees [the trustees] in Bible stock, viz: Stereotype plates for printing the Old and New Testament together with the Psalms in Metre, or Bibles of this description in sheets or bound. Second. They shall pay for the use of said stock......at the rate of six per cent per annum......in copies of the Scriptures at wholesale prices to be distributed by the said Board of Publication, according to their own discretion, or any directions or suggestions they may receive from said assignee from time to time." And "At the end of each year......the said Board of Publication shall render an account to the said assignees of the condition of the funds in their hands and also donations made by them through the year as well as all other matters in relation to which the said assignees may require them to report." Pursuant to the agreement the trus-

tees turned over to the board of publication divers sums, amounting to $10,380, which, with other funds, the board invested in stereotyped plates, etc., for use in carrying out the provisions of the deed and contract. Bibles as specified were printed and annually distributed gratis in amounts sufficient at wholesale rates to pay the six per cent stated in the contract, and annual reports as therein required were made down to the year 1915. Meantime the plates above referred to were worn out and gone, and defendant refused to longer continue the printing and annual distribution of Bibles as named in the contract. Then plaintiffs, successors to the original trustees, brought this suit for the $10,380, with interest from the time of such refusal. The trial court, after careful consideration, embracing findings of facts and legal conclusions, entered judgment for defendant; from which plaintiffs brought this appeal.

The court's conclusion was sound. The trust deed clearly contemplates that the corpus of the estate shall be used for the designated purpose, otherwise the grantor would not have stipulated that not more than one-half of the fund should be so used during his lifetime. The fact that he directs the making and gratuitous distribution of distinctive types of Bibles, which would necessarily involve large expenditures, more than the income, leads to the same conclusion. As the trustees are nowhere limited to the interest or use of the fund they had the right to exhaust it for the purpose of the trust.

The next question is, Did the agreement create the relation of principal and agent, or that of debtor and creditor, between the trustees and the defendants? Clearly the former if we regard the language of the instrument and the end in view. The trustees agree to appoint the board of publication as their agent to carry out the object contemplated by Alex. McElroy, and the board agrees to accept the agency and to invest the money received from the trustees in Bible stock, viz:

stereotype plates, etc., for the purpose of making the kind of Bibles specified in the original trust deed and admittedly it was so invested. Then comes the further provision that for the use of the stock the defendant shall pay six per cent per annum by the gratuitous distribution of Bibles at wholesale prices. The fact that defendant was to and did so pay for the use of the stock tends to show it was not the owner thereof, for as a rule one does not pay for the use of his own property. There is no suggestion in the agreement that the per annum payment was for interest on the fund as a loan, or that the fund was ever to be returned to the trustees. On the contrary it was to be and was invested by their agent in the stock, and the six per cent was paid according to the agreement so long as the plates lasted, and it is hard to see on what theory the principal can now recover from the agent a fund which the latter expended (according to the terms of the agency) fifty years ago. True, defendant also used the plates in printing other Bibles, but that did not violate the agreement, and there is no obligation resting upon it to pay for the use of the plates after they are gone; if so the obligation would endure forever, which is not a reasonable construction of the deed or agreement. The trial court correctly concludes that the arrangement was not intended to be perpetual. In view of the fact that defendant was engaged in the publication and distribution of religious literature and Bibles, aside from those embraced in the agreement, the provision for the six per cent annual distribution is not inconsistent with the finding of an agency.

In our view of the case there is no ambiguity in the deed or agreement, and hence, the fact that, in defendant's minute books and reports, the McElroy fund is stated as a permanent liability, is not controlling. It is only in case of doubt that the parties' own construction of the contract can be resorted to: Lenox Coal Company v. Duncan-Spangler Coal Company, 265 Pa. 572, filed herewith, and cases there cited. Where the

written agreements are clear they cannot be controlled by the acts or declarations of the parties (Pickering v. Stapler, 5 S. & R. 107; Christine v. Whitehill, 16 S. & R. 98) ; and this is especially so, as pointed out by the court below, where the parties on both sides are without personal interest and concerned only in promoting a worthy charity.

As the trustees were not misled to their prejudice, there is no basis for a claim of estoppel : Schwab.v. Edge (No. 1), 214 Pa. 602. The reference to this fund in the proceedings of the General Assembly in 1864 says, inter alia, "the assignees of A. McElroy have employed us to do their business," which supports the finding of an agency; but in after years, as stated above, the fund is referred to as a permanent liability. The defendant made the annual six per cent distribution of Bibles for about fifty years, extending far beyond the life of the plates in which the fund was invested, and there is no further legal liability resting upon them.

The judgment is affirmed.