Peoples National Bank of Ellwood City, Appellant, *v.* Bartel et al.

Argued April 21, 1937.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William D. Cobau,* with him *James Glenn Berry* of *Cobau & Berry,* for appellant.

*Randall B. Luke,* with him *J. Elder Bryan,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1937:

Judgment was confessed on a note, dated May 19, 1930, signed by the defendants, Howard Johnson and Harriet M. Bartel. Upon petition of Johnson, the judgment was opened as to him and an issue awarded, which resulted in a verdict in his favor, upon which a judgment was entered. This appeal followed.

In 1925, Don Bartel applied to the bank for a loan, giving as security for the payment thereof a note signed by himself, O. E. Bartel, his father, and Howard Johnson. The note was renewed by the makers from time to time until the death of O. E. Bartel in December, 1928. Shortly following his father's death, Don Bartel disappeared. Thereafter, Harriet M. Bartel, the widow of O. E. Bartel, and Johnson jointly executed a judgment note for the existing debt, which was last renewed

May 18, 1930, for three months, and is the note in question.

The defense set up at the trial was that Mrs. Bartel was the principal debtor and that Johnson was her surety, and that there was sufficient evidence of an agreement between the bank and Johnson to submit to the jury the question whether Johnson had not been misled to his disadvantage, thus invoking the doctrine of estoppel.

Notwithstanding Johnson may have originally signed as an accommodation to Don Bartel, he assumed, as to the payee, a primary obligation and he made the indebtedness his own; he undoubtedly was a co-maker, not a surety: Negotiable Instrument Act of May 16, 1901, P. L. 194, chap. I, art. II, §29 (56 PS §67); *Delaware County Trust etc. Co. v. Haser*, 199 Pa. 17, 48 A. 694; *Buhler Co. v. Chidester*, 262 Pa. 130, 105 A. 52.

The principal defense relied upon was that the bank is estopped from alleging that it did not release Johnson from his obligation. It appears from the evidence offered upon his part that after Mr. Bartel's death he requested C. C. Law, president of the bank, to "take steps to have this note paid from funds available" and that Law "promised cooperation." He had no legal right to insist that the bank take action. He could have paid the note and proceeded to protect himself as he saw fit. Certainly the bank made no definite promise as to what it would do. Its reply impresses us as being very vague. No action having been taken by the bank, Johnson then insisted that it enter the note of record. Whether that request should have been carried out was entirely a matter within the discretion of the bank; it was not compelled to comply therewith. When the note was last renewed, Johnson told C. W. Jackson, cashier of the bank, that that would be the last time he would sign a renewal. There was no proof that a bank official said anything of a misleading nature

at that time. Considerable stress is placed upon the statement of Law when Johnson inquired of him, "What about the Bartel note?" to which he replied, "I have that taken care of." Harriet M. Bartel, in August, 1930, had executed and delivered to the bank her individual note as security for the note in question, upon which judgment was entered and confessed the following December. It could reasonably be concluded that Law thought Johnson knew of Mrs. Bartel's note and was referring to it. If he had asked, "What about my note?" then no uncertainty would have existed in either party's mind of the obligation to which he referred.

It was incumbent upon Johnson in relying upon the defense of equitable estoppel to establish every essential fact entering into that doctrine by clear, precise, and unequivocal evidence: *Schwab v. Edge et al.*, 214 Pa. 602, 606, 64 A. 80. We find no such convincing statements as the law requires made by the bank officials which would have led Johnson into believing that he would be released or that the note had been paid; admittedly, he was not expressly so informed. The language of the bank official is not susceptible of that interpretation without resorting to an inference. An argument or an inference will not support an estoppel: *Schwab v. Edge et al.*, supra. The bank never surrendered Johnson's note, nor did he request it to do so, nor is there proof of any agreement that Mrs. Bartel's individual note was a substitute and taken in discharge of the note on which he was a co-maker. The legal presumption is that it was but a collateral security for the payment thereof: *Second Natl. Bank v. Graham*, 246 Pa. 256, 92 A. 198.

It is stated in *Citizens' Bank of Wind Gap v. Lipschitz*, 296 Pa. 291, 294, 145 A. 831: "The law is well settled that the acceptance of a new obligation in place of the old is not a satisfaction of the earlier one, though made by the same person (*McCartney v. Kipp*, 171 Pa.

644, [33 A. 233]; *Newhall v. Arnett,* 279 Pa. 317), and the same is true where the second note is signed by another: *Lauer v. Yetzer,* 3 Pa. Superior Ct. 461. There is a legal presumption that the substituted paper is not taken in discharge, but is received as collateral security for the payment originally undertaken [citing cases]." In that case, which is relied upon by the appellees, Morris Lipschitz signed a note to make good an acceptance by the Triangle Silk Mfg. Co., of which he was treasurer. When a renewal note of September 8, 1928, was given, the original note of June 8th was retained by the bank. When it became due on December 8th the bank accepted a new note of the Triangle Silk Mfg. Co. and the obligation of September 8th was surrendered. The court held, in such circumstances, that this conduct raised a question of fact whether or not it was the intention of the bank to accept a new note in place of that executed by Lipschitz as an individual maker. The case in hand differs from that case in the material fact that the last renewal signed by Johnson was not surrendered, nor did he ever ask for the note.

It is true that after Mrs. Bartel had given her individual note, the bank carried the transaction in the liability ledger in her name and credits were placed thereto as she from time to time paid interest and made payments on account of the principal until the balance remaining due at the time of this suit was $738.57; but there was no evidence that Johnson knew anything about that. He was required to show that he had knowledge of the bank's actions and was misled thereby (*Atchison et al. v. United P. Board of Pub.,* 266 Pa. 47, 109 A. 597; *Gianni v. Union Bank & Trust Co.,* 311 Pa. 121, 166 A. 553); that is an essential element of this doctrine. Acts of the bank, unknown to him, of course, could not have misled him: *Troop v. Franklin Sav. & Trust Co.,* 291 Pa. 18, 139 A. 492.

Johnson claims further that there was a novation.

But we are convinced that he did not sufficiently overcome by proper proof the legal presumption that the new obligation of Mrs. Bartel was taken only as security for the joint note. While, ordinarily, a novation is a question of fact, the burden of proof is upon one so claiming, and he must show a special agreement for substitution.

Judgment of the learned court below is reversed, and it is now ordered that judgment be entered in favor of plaintiff and against defendants for the balance due on the note, with interest.