Peoples National Bank, Appellant, *v.*
Weingartner et al.

Argued April 21, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*Allen D. Keller,* with him *Randall B. Luke,* for appellant.

*James A. Chambers,* of *Chambers & Chambers,* with him *Alvah M. Shumaker,* for appellee.

OPINION BY HIRT, J., July 16, 1943:

These appeals are from orders opening two confessed judgments as to the defendant J. G. Weingartner. From a review of the record, bearing in mind that the proceeding is equitable (*Kweller v. Becker,* 338 Pa. 169, 12 A. 2d 567), it not only appears that the orders were proper but that refusal to open would have been an abuse of discretion under the circumstances. *Cronauer v. Bayer,* 140 Pa. Superior Ct. 91, 13 A. 2d 75.

On January 7, 1927 H. A. Weingartner borrowed $1,600 from appellant bank wholly for his own use. As security for the loan he gave his judgment note to the bank for that amount in which J. G. Weingartner joined as accommodation maker. A second note was given to the bank by defendants under identical circumstances to secure a loan of $1,500 to H. A. Weingartner on January 27, 1927. Each note was payable 90 days from date. The bank entered judgments by confession on the two notes against both defendants on February 1, 1929. There was a prior judgment of record for $1,100 in favor of one Dallas Houk against H. A. Weingartner alone.

In 1926 H. A. Weingartner had sold his farm to one

Winkler and received back from him a purchase money mortgage for $5,500 which, when recorded, was second in lien to a mortgage of $4,500 held by a Cleveland bank. On September 30, 1927, he sold and assigned the Winkler mortgage to appellant bank at a discount of $1,000, for an agreed consideration of $4,500. His purpose in selling the mortgage was to discharge his obligations to Houk and to the bank. Out of the proceeds of this transaction the bank paid the Houk judgment in full; it satisfied the two notes of defendants of $1,500 and $1,600 on its books and paid the remaining purchase money, amounting to about $200, to H. A. Weingartner. He understood that both notes were to be paid from the proceeds of sale of the mortgage and there is no evidence of any agreement with him that the judgments should remain unsatisfied for any purpose. Some time after the sale of the mortgage and the distribution of the proceeds, when he demanded a return of his notes, (he did not know that judgments had been entered) an officer of the bank informed him of the intention of the bank to hold them "until the mortgage was paid." The bank did not satisfy the judgments and continued to refuse to do so on the ground that they remained the valid obligations of the defendants as collateral security for the payment of the Winkler mortgage. It is not contended that J. G. Weingartner agreed to this unusual procedure in changing his obligation as surety for the payment of his brother's obligations amounting to $3,100 to the much greater responsibilty for the payment of the obligation of a stranger for $5,500 on a second mortgage. His testimony is that he was not consulted in the matter and although he was told of the bank's purchase of the Winkler mortgage, he did not know until five years later that the bank continued to hold the judgments as security for the payment of that mortgage.

There is equivocal language on behalf of the bank as to the application of the proceeds of the purchase price

of the Winkler mortgage to the payment of the Wein-gartner notes. In its answer the bank "admits that certain credit was set up to the said H. A. Weingartner" in the amount of the two notes. The assistant cashier of the bank who handled both transactions testified: "We paid those notes, took them off our books" but added "not paid them, but took them off our records, held them as collateral." But no matter what construction the bank now attempts to put on the transaction it is certain from the admitted application of the purchase money of the Winkler mortgage, that these notes in effect were paid in full on September 30, 1927.

The bank seeks to avoid the legal effect of this conclusion by the admitted fact that J. G. Weingartner joined in amicable revivals of both judgments in February 1932 and again in January 1937. He testified that on the occasion of the first revival an officer of the bank first informed him that the notes were held as collateral to the mortgage and threatened to "send the sheriff on [him]" if he didn't consent to the revivals. He said that he then signed because he "didn't know any better." In our view even if J. G. Weingartner joined in the revivals with full knowledge of the facts there can be no recovery against him. The agreement between H. A. Weingartner and the bank under which the bank took an assignment of the Winkler mortgage and satisfied the two notes on its books, was an accord and satisfaction of them. *Spencer v. Spencer,* 253 Pa. 315, 98 A. 571. It is unimportant that J. G. Weingartner was not a party to the accord. The general rule is that the discharge of one debtor by accord and satisfaction, discharges the other, since the obligation itself is extinguished. 53 A.L.R. 1469. The rule is peculiarly applicable in this case for the bank knew that J. G. Weingartner was an accommodation maker. As to the bank he was a surety (*First National Bank v. Stolar,* 130 Pa. Superior Ct. 480, 197 A. 499) and not a principal

debtor. *Peoples Nat. Bk. v. Bartel,* 128 Pa. Superior Ct. 128, 193 A. 59.

Upon satisfaction of the notes from the proceeds of the Winkler mortgage the judgments were also extinguished as valid obligations and the amicable revivals did not breathe life into them. "The revival of a judgment by regular proceedings reinvests it with all the effect and conditions which originally belonged to it" *(Second Nat. Bk. v. Faber,* 332 Pa. 124, 2 A. 2d 747), but no more, 34 C. J. §1056; a nullity revived is still a nullity. The delay in attacking the judgment, therefore, whatever the reason, is of no moment, for laches does not estop one from attacking an invalid judgment entered against him *(Haverford Twp. S. D. v. Herzog,* 314 Pa. 161, 171 A. 455) nor a judgment which has been discharged in fact by accord and satisfaction.

The bank could have successfully attacked the orders opening the judgments only by proof of a novation under the terms of which the notes and the judgments entered upon them were to continue in force for another purpose in consideration of the extinguishment of the original obligations. But the elements of a novation are essentially the same as in an original transaction and include *a meeting of the minds of all parties* as to the substitution of the new undertaking for the old. *Wheatland Tube Co. v. McDowell & Co.,* 317 Pa. 295, 176 A. 217. The burden of proof to establish a novation showing a special agreement extinguishing the original obligations by a new promise, was on the bank. *Peoples Nat. Bk. v. Bartel,* supra. There is not a word of testimony that J. G. Weingartner was ever consulted in the matter, and for the reasons above stated his joining in amicable revivals of the judgment do not now estop him from defending on the ground of accord and satisfaction, and there is no evidence of a new agreement imposing liability on him under a novation.

Orders affirmed.