Olyphant Bank *v.* Borys et al., Appellants.

Argued March 7, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*A. A. Vosburg,* for appellants.

*Harry C. Hubler,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY HIRT, J., April 13, 1944:

On the issue of payment, in an opened judgment, the

jury found in favor of plaintiff. No trial errors appear and all of the credible evidence supports the verdict. The judgment will be affirmed.

Apolonia Borys borrowed $5,500 and gave her demand note to Olyphant Bank in that amount, on which the judgment in question was entered. With her note she delivered a fire insurance policy, payable to the bank. Olyphant Bank was later merged with another, forming Mid-Valley Trust Company, which became the owner of the note. Apolonia Borys died. Some time later the building on land bound by the judgment was damaged by fire. In settlement of the fire loss the trust company received $6,583.82. On March 19, 1931, the executor and all of defendant beneficiaries of the estate met at the bank and in writing requested the bank to "use all these funds with the exception of $500" needed by the estate, in addition to available money in the hands of the executor, to rehabilitate the property. Accordingly $1,200 of the insurance money was used to pay another note of decedent held by the bank; $4,850 with accrued interest was paid on the note in question leaving a balance of $650 principal unpaid. The remainder of the insurance money, amounting to slightly more than $500 was paid to John J. Borys, executor of the estate, as requested by defendants.

The $5,500 note on its face was made payable to Olyphant Bank and was assigned, at the time of the merger, to plaintiff trust company. As evidence of the unpaid balance of the obligation "in current form," the trust company on December 10, 1931, took a new demand note for $650 with interest, signed "Apolonia Borys Estate, John J. Borys, Exer." This note recites that the $5,500 note remains "as collateral security for payment of this or any other liability or liabilities [of Apolonia Borys] to said holder hereof, due or to become due." In addition to the unpaid obligation of $650, Apolonia Borys then was contingently liable as

endorser for two of her sons in a total of $1,721.18. At the trial however, the trust company (then in possession of the Secretary of Banking for liquidation) disclaimed the right to look to the collateral for payment of the contingent liability and the single issue was whether the $5,500 note and judgment were satisfied by the payment out of the insurance money. The jury found $650 principal unpaid, which with interest amounted to $1,029.54. The verdict was for that amount.

It is not contended that the executor exceeded his authority in giving the $650 note. Cf. *Williamson's Appeal*, 94 Pa. 231. And in general the acceptance of a new obligation is not satisfaction of an existing note or judgment unless so intended. *Greiner v. Brubaker, Admrx.*, 151 Pa. Superior Ct. 515, 30 A. 2d 621. In fact the legal presumption is to the contrary; that a new note is but security for, and not satisfaction of, the original obligation. *Peoples Nat. Bk. v. Bartel et al.*, 128 Pa. Superior Ct. 128, 193 A. 59; *Aliquippa N. Bk. v. Harvey Exrx.*, 340 Pa. 223, 16 A. 2d 409. No novation results in the absence of specific proof to that effect. 12 A. L. R. 1546.

Here, the executor gave the $650 note merely as recognition of existing liability of the estate and his note specifically provided that the prior obligation and judgment should remain. The executor's note therefore does not affect the right of the receiver of the trust company to look to the judgment for payment; plaintiff is not limited thereby to a claim on the executor's note against an estate, which, so far as the record discloses, is without assets to pay it.

Defendants rely on the testimony of two of them to the effect that the trust company through its cashier agreed to satisfy the $5,500 judgment out of the insurance money. Such agreement is negatived by the written request signed by defendants on March 19, 1931, and

was denied by the cashier; the note subsequently given by the executor, as well as the continued possession of the original note by the trust company with the judgment unsatisfied, also rebut the existence of such agreement. The jury hardly, without caprice, could have found otherwise than for plaintiff.

Judgment affirmed.