## Rahn et ux. v. D'Agostino

184

*Ralph W. Eby, Jr.*, for complainants.

*Alfred C. Alspach*, for respondent.

SCHAEFFER, P. J., November 5, 1948.—Plaintiffs filed this bill in equity to enjoin defendant from operating a shoe repair shop, excepting orthopedic or special work, within the Borough of Elizabethtown, Lancaster County, Pa.

## Pleadings

The pleadings consist of a bill in equity and an answer.

## Findings of Fact

1. On August 2, 1946, Joseph D'Agostino, defendant, entered into a written agreement of sale with S. Marshall Greason and Wayne A. Johnson and on August 5, 1946, transferred to said purchasers his entire shoe repair business, machinery and equipment, together with the stock, located at 10 Center Square, Elizabethtown, Lancaster County, Pa., for $3,300, a full copy of said agreement being attached to the bill in equity.

2. The agreement of sale provides, inter alia:

"The said Joseph D'Agostino hereby further agrees not to open or reëstablish or operate another shoe repair shop within the Borough of Elizabethtown, Pa., in less period than ten years from date. However, it

is understood that any orthopedic or special work is excepted and has no bearing whatsoever in the sale of the above shoe repair business."

3. Defendant had operated said business for about six years until he sold the same to S. Marshall Greason and Wayne A. Johnson, who operated the business at the same location until May 27, 1947, when the latter sold and transferred the business, machinery, equipment and stock, together with the good will thereof, to Raymond M. Rahn and Ida C. Rahn, plaintiffs herein, and agreed in writing with the purchasers not to compete in said business within a 10-mile radius of Elizabethtown for a period of five years.

4. At the time of the latter sale the following was endorsed on the original agreement of sale from Joseph D'Agostino to S. Marshall Greason and Wayne A. Johnson: "I hereby authorize Mr. Raymond Rahn to enforce this agreement for us."

5. After the latter sale and transfer defendant, Joseph D'Agostino, began and has continued to operate a general shoe repair business about two blocks away from plaintiffs' place of business within the Borough of Elizabethtown, Pa.

*Discussion*

This case presents largely a legal question, whether plaintiffs are entitled to the benefit of the covenant in restraint of trade whereby defendant agreed not to operate a shoe repair shop in the Borough of Elizabethtown, Pa., for a period of 10 years, and whether such right passed by assignment to the subsequent purchasers and can be enforced by them. In Gompers et al. v. Rochester, 56 Pa. 194, a merchant sold his store and goods to a partnership consisting of three parties, agreeing not to engage in the same business within 10 miles of the same place for five years. Two of the partners sold out to the third partner and

moved beyond the restricted limits. The third afterward sold all the property to the original vendor and released him from the covenant not to do business. In the opinion it is said:

"The covenant was for the protection of the purchasers while they continued doing business, and would pass doubtless to their assignee. Undoubtedly it passed to F. M. Kinter, as incident to the property and business when he bought out his partners. . . . The fallacy of the position of the plaintiffs in error, seems to consist in regarding the covenant as attaching, or incident to them personally; whereas, it was alone an incident to property which they had parted with, and the business also. . . . The covenant, at all events, passed with the business, which it had been its object to protect."

In A. L. I. Restatement of the Law of Contracts, §151, illustration 4 is as follows:

"B sells his business to A, contracting that he will not enter into competition with A. A sells the business to C who receives from A as part of the bargain an assignment of A's right to have B refrain from competition. The assignment is effective and B may be enjoined from competing with C, with respect to the business derived from B, since B's contract is interpreted as binding him not to compete with the business which he has sold, whether that is conducted by the promisee or by his successor." In 2 Williston on the Law of Contracts, 1181, §412, the following rule is stated:

"Where it is possible courts are disposed to hold that a valuable contract right is not only assignable, but is not confined in its scope to the person of the assignee. A contract by one who has sold a business that he will not compete with the purchaser if strictly interpreted does not forbid competition with an assignee of the purchaser, but the seller's promise is interpreted,

unless a contrary intention is expressed, as a promise not to compete with the business in question, whether conducted by the promisee or by one who succeeds to his ownership."

In Ebert v. Kaufmann, 17 Dist. R. 156, plaintiff sold his mercantile business, including the good will, and bound himself not to engage in the same business within 10 years and within five miles of the present location. The business was later resold to another party to the same extent and as fully as vested in him under the original agreement of sale. It was decided by Moschzisker, J., that the covenant between the original parties passed to the subsequent purchaser and could be enforced by the latter against the original seller. It is said in the opinion:

"A covenant not to do business forms a valuable part of the good will of such trade or business, and the benefit of it will pass to a purchaser of that good will as incidental thereto without special mention, and although the covenant was not expressed to be made with the covenantee and his assigns," citing Gompers v. Rochester, 56 Pa. 194, supra.

Defendant in his brief states: "While it is true that the general tenor of the decided cases is that a contract not to engage in a business is assignable as an incident to the sale of the business by the promisee, nevertheless, this rule has no application where the intent of the parties indicates a contrary desire."

D. L. Landis, who prepared the original agreement, testified as follows:

"This agreement was just between these two parties. That is why I wouldn't put this heirs and assigns in there. . . . (Q) Mr. D'Agostino testified something to the effect that he wanted it distinctly understood that this would not bind and did not go to the benefit of any of the assigns. Did you hear that statement? (A) Yes. (Q) And Mr. Greason and Johnson were

present at that time? (A) Yes. . . . (Q) And then was there any discussion at the time the agreement was signed? (A) Yes, we talked about it at the time. (Q) What was said? (A) Well, it was a rather short agreement, and I told them now this just binds the two parties here."

Defendant testified that he understood verbally that he could go back into the business in the event that Greason and Johnson sold the business. Defendant testified also that he made the following request: "Will you please put on the agreement in case you would sell out I want to be free, that if I ever go back again I can go back in business again," and that either Greason or Johnson said, "Joe, you don't have to worry." Accordingly, defendant contends that it was the intention when the original agreement was entered into that it was not assignable. In the instant case there is no allegation of fraud or mistake and the terms of the written agreement and the transfer must govern. In the recent case of Hambleton et al. v. Hartman et ux., 160 Pa. Superior Ct. 447 (1947), it was decided that where the parties, without fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract and unless fraud, accident or mistake is averred, the writing constitutes the agreement between the parties and its terms cannot be added to nor subtracted from by parol evidence. In Speier v. Michelson, 303 Pa. 66, where defendant sought to prove by parol evidence that execution on a note was to be against a particular source only, it is said:

"Any parol agreement that subjects the obligation on the instrument to any condition or contingency,

whether in person, time or amount, is ineffective, and the instrument is unconditional, unless fraud, accident, or mistake was the means through which the instrument was procured."

The court is of the opinion that the parol testimony to show an intent which does not appear in the written agreement, in the absence of fraud or mistake, is ineffective. The writing is the best and only evidence of the agreement and its legal effect must govern. Under the law the written contract in restraint of trade was assignable and it passed to the purchaser pursuant to the endorsement on the original agreement of sale and it again passed to the last purchasers of the business under the good-will clause. The additional restriction in the second sale does not affect or alter the rights created in the first sale. It did not amount to a novation: New Eureka Amusement Co. v. Rosinsky, 126 Pa. Superior Ct. 444, 450; Peoples National Bank v. Weingartner et al., 153 Pa. Superior Ct. 40, 44.

## Conclusion of Law

The restriction in restraint of trade contained in the agreement of sale dated August 2, 1946, for the shoe repair business, equipment and stock from Joseph D'Agostino to S. Marshall Greason and Wayne A. Johnson, whereby Joseph D'Agostino, defendant in this case, agreed not to open, reëstablish or operate another shoe repair shop within the Borough of Elizabethtown, for a period of not less than 10 years from August 2, 1946, excepting any orthopedic or special work, is assignable and it is now enforcible by plaintiffs, the present owners of said busines .

## Decree Nisi

And now, November 5, 1948, it is ordered, adjudged and decreed as follows:

1. That said Joseph D'Agostino is hereby enjoined from opening, reëstablishing or operating a shoe repair shop within the Borough of Elizabethtown, Lancaster County, Pa., excepting "any orthopedic or special work", until August 2, 1956.

2. That the costs of this proceeding shall be paid by Joseph D'Agostino, defendant.