## American Dressler Tunnel Kilns, Inc., v. Holt, Appellant.

*Contract—Written contract—Construction—Party's construction of contract.*

1. Plaintiff, a corporation, engaged in the business of building kilns, entered into a written contract with defendant whereby the

latter was to finance the construction of kilns for those who might apply to plaintiff for that purpose. The applicant for a kiln was to pay defendant the agreed price for a kiln, called the "cash price." Plaintiff was to do all the work, for which it was to receive from defendant, what the agreement defined as the "contract price," being 88 per cent of the "cash price." The "contract price" was to be payable, $1,000 on signing the agreement, 25 per cent of the "cash price," when certain work was done, a further sum of 25 per cent of the "cash price" when a second portion of the work was finished, a still further sum of 25 per cent of the "cash price," when a third portion of the work was done, and the "remainder of the contract price" upon completion of the work. *Held*, that plaintiff, as to the percentage items, was entitled to receive from defendant after the initial payment of $1,000, 25 per cent of the "cash price" paid by the applicant to defendant, and not 25 per cent of the "contract price," which was but 88 per cent of the total cost.

2. Only in case of doubt or ambiguity in a written contract can the parties' own construction be resorted to.

Argued October 20, 1920. Appeal, No. 163, Oct. T., 1920, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1918, No. 255, on verdict for plaintiff, in case of American Dressler Tunnel Kilns, Inc., v. George H. Holt, doing business as George H. Holt & Co. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Foreign attachment in assumpsit on a written contract. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $11,379.14. Defendant appealed.

*Errors assigned* were instructions, quoting them.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *Sinclair Hamilton,* for appellant.— Interpretation given by the parties themselves will be favored: Topliff v. Topliff, 122 U. S. 121; Tustin v. Coal & Iron Co., 250 Pa. 425; Myer's Est., 238 Pa. 195; Collison v. Phila. Co., 233 Pa. 350; McMillin v. Titus, 222

Pa. 500; Equitable Gas Co. v. Limegrover, 54 Pa. Superior Ct. 250; Ramble v. Coal Co., 47 Pa. Superior Ct. 28.

*Henry G. Miller,* pro hac vice, with him *Allen H. Kerr* and *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY MR. JUSTICE WALLING, December 31, 1920:

This is an action of foreign attachment in assumpsit, and the single question raised is as to the proper construction of a written contract. The plaintiff, American Dressler Tunnel Kilns, Inc., is a corporation of the state of New York, engaged in the erection, under patents, of tunnel-shaped kilns, for use in the manufacture of pottery, brick, steel, etc. The defendant, George H. Holt, is in business at Chicago, under the name of George H. Holt & Company. Plaintiff lacked means for the proper prosecution of its own business and the granting of help to those who might desire to become its patrons; so, after extended negotiations, the parties hereto entered into a written contract, in November, 1916 (called the main contract), whereby defendant (called the grantee) was to finance the construction of the kilns for those who might wish to have them installed; and later the purchaser (called the applicant) was to repay him the agreed price for the kilns, called in the contract the "cash price." Plaintiff (called the grantor) was to do all the work and furnish all the materials for the construction of the kilns, for which it was to receive from defendant what the agreement defines as the "contract price"—being eighty-eight per cent of the "cash price." Pursuant to the main contract the parties hereto contracted with applicants for the erection of various kilns amounting in all to about $300,000. This case hinges upon section 5 of article 4 of the main contract, which is as follows, viz: "The contract price payable by Grantee to Grantor, as in the two preceding sections determined and fixed, shall be payable by Grantee to

Grantor as follows: One Thousand ($1,000.00) Dollars upon signing of contract as an advance payment; a sum equal to 25% of the cash price, less the One Thousand ($1,000.00) Dollars already advanced, to be received by Grantor shall be payable to Grantor when Grantor has blue prints ready, foundations laid, and walls started; a sum equal to 25% of said cash price to Grantor when heating, cooling and combustion chambers and pipes are in place; a sum equal to 25% of said cash price to Grantor when the Kiln is ready to fire and the other equipment is ready for operation; the remainder of the contract price due Grantor shall be paid by Grantee thirty days after the firing of the completed kiln and upon the acceptance of said Kiln and equipment and settlement therefor with Grantee, by Applicant making first payment and delivery to and acceptance of notes by Grantee or upon Applicant's cash settlement with Grantee according as Applicant purchases upon deferred payments or for cash."

Plaintiff contends that the first, second and third payments specified in the section above quoted should each be 25% of the cost to applicant, while defendant contends that each should be only 25% of plaintiff's compensation or 22% of the total cost. The trial judge sustained plaintiff's contention and, from judgment entered upon the verdict in its favor defendant brought this appeal.

In our opinion the trial court was right. The contract must be construed as a whole, and section 3 of article 4 states, inter alia, that, "Grantor shall receive from Grantee, in full payment therefor, a price, hereinafter referred to as contract price, equal to the cash price named in the contract between Grantee and Applicant less a sum equal to 12% thereof"; and in sections 2 and 4 of the same article the price grantee (Holt) was to receive from the applicant is referred to as the "cash price." Hence, when section 5 repeatedly refers to "cash price" and also to "contract price," the former must be

construed as meaning the price paid to Holt, and the latter as the price received by the Dressler Company. There is no other reason for the separate use of the terms "cash price" and "contract price" in that section. We must assume that those terms as there used mean what the contract says they mean. This conclusion is strengthened by the fact that the first, second and third payments are respectively designated as 25% of the cash price, and the last payment as "the remainder of the contract price." If the terms were intended to mean the same price, why not say "the remainder of the cash price" or "the remaining 25%." As in the contract the words "cash price" and "contract price" refer to different things, we must assume that each was intended to express its proper meaning in section 5. In other words, since the price grantor (Dressler) was to receive is expressly defined as the "contract price," and the price grantee (Holt) was to receive was the "cash price," we cannot assume that the latter term was three times mistakenly used for the former in this section, especially as the term "contract price" is therein twice correctly used. The draftsman evidently had in mind the two distinct prices, for it is significant that in referring to the 25% payments, the term "cash price" is uniformly employed and not "contract price," or "price" as would naturally have been done had such payments been based on the amount Dressler was to receive. The words, "to be received by grantor," are seemingly redundant and might refer to the 25% of the cash price or to the $1,000; but cannot change the term "cash price" to "contract price." The phrase "to grantor" in the clause, "a sum equal to 25% of said cash price to grantor," would seem to express the same thought as "shall be payable to grantor." Considering the entire contract, its meaning is not doubtful, and, therefore, we cannot consider the evidence, pro and con, as to the parties' own construction thereof. It is only in case of doubt or ambiguity that the parties' own construction can be resorted to: Atchi-

son v. United P. Board of Pub., 266 Pa. 47; Lenox C. Co. v. Duncan-Spangler C. Co., 265 Pa. 572, 575, and cases there cited.

The assignments of error are overruled and the judgment is affirmed.