## Stevenson, Appellant, v. Sun Company.

*Contracts—Construction of contracts—Clear and precise terms
—Matter for court.*

Where the meaning of a contract is clear without obscure or ambiguous language, the duty to construe it rests upon the court, and evidence pro and con as to the parties' own interpretation of it will not be considered.

"Where a written contract provided for the sale and purchase of a minimum and maximum amount of oil to be delivered in nearly equal quantities each month throughout the year, the agreement was bilateral and if the vendee failed to order the maximum shipment during any month he could not require the vendor to deliver the balance of the monthly maximum not thus ordered in a subsequent month. The contract did not give the vendee the right to buy a thousand barrels of oil at a fixed price and to take it when and as he chose."

Argued October 12, 1921. Appeal, No. 135, Oct. T., 1921, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., June T., 1916, No. 1566, on verdict for plaintiffs in the case of James H. Stevenson, trading as Stevenson Bro. & Co., v. Sun Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit for breach of contract. Before AUDENRIED, J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of the plaintiffs in the sum of $277.88, and judgment was entered thereon. Plaintiff appealed.

*Error assigned,* among others, was in not directing the verdict for the full amount of the plaintiffs' claim.

*Joseph N. Ewing,* of *Saul, Ewing, Remick & Saul,* for appellant.—Where the parties have interpreted the con-

tract themselves and acted upon such interpretation, the court will regard it as the proper one and enforce accordingly. The plaintiffs were entitled to the maximum amount of the contract: McMillin v. Titus, 222 Pa. 500; Lehigh Valley Coal Co. v. Searle et al., 248 Pa. 385; Myers's Est., 238 Pa. 195; Beedy v. Nypano R. R. Co., 250 Pa. 51; Peoples Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; Portland Ice Co. v. Connor, 24 Pa. Superior Ct. 493.

*Chester N. Farr, Jr.,* and with him *Francis S. McIlhenny,* for appellee.

Opinion by Head, J., November 21, 1921:

The plaintiffs ground their action upon the alleged breach of a contract in writing, a copy of which they make part of their statement of claim. There is no suggestion in that statement that anything was omitted from the written contract either by accident or design. There is no hint its execution was induced by any undertaking or agreement distinct from what the writing contains. In a word, the plaintiffs plant their case upon the proposition that the written instrument they exhibit contains and accurately portrays the entire agreement of the parties. They stand upon the allegation the defendant breached the obligations imposed upon it by that instrument. If the meaning of the contract as written is not obscured by the use of any ambiguous or meaningless language the duty to construe it plainly rested upon the court. In discharging that duty the court needed no aid from any extrinsic evidence.

Let us quote the controlling provisions of that contract. Defendant hereby sells to the plaintiffs and the latter hereby purchase from the defendant "seven hundred fifty (750) barrels minimum to one thousand (1,000) barrels maximum to be taken out in the grades and at the prices mentioned below; same to be del'd (delivered) in barrels and secured from" defendant's ware-

house "from April 1, 1915, to March 31, 1916, but in nearly equal quantities each month grades and prices to be as follows, etc." The defendant, therefore, plainly agreed to sell to the plaintiffs a quantity of oil not less than seven hundred and fifty barrels, not more than one thousand barrels. The plaintiffs in like manner agreed to purchase at least 750 barrels. There can be no doubt the option was given to the plaintiffs to acquit themselves of their obligation under the contract by the purchase of and payment for seven hundred and fifty barrels of oil at the times and in the manner specified. There can be as little doubt that if the plaintiffs chose to exercise their right to purchase one thousand barrels of oil the defendant's obligation would be necessarily expanded so as to enable the plaintiffs to exercise their contract right. There was no dispute in the case as to the price or manner of payment. The term or period during which the contract was to be operative was one year. Thus far at least, there is nothing inherent in the contract, or arising from any ambiguity in the language used to express it, to obscure its true meaning and the intention of the parties in making it. What was the legal effect and meaning of the following language already quoted? "From April 1, 1915, to March 31, 1916, but in nearly equal quantities each month." No construction of the contract can be accepted which denies to that provision of it its clear and unmistakable effect. It was not the purpose of the plaintiffs to obligate themselves to buy and pay for seven hundred and fifty barrels of oil delivered en bloc nor was it the obligation of the defendant to sell and deliver either seven hundred and fifty barrels or one thousand barrels at any moment during the contract period when the plaintiffs might choose to order the whole of the oil contracted for. It was the plain intent and meaning of the contract that the orders for the oil by the plaintiffs and the sales and deliveries of it by the defendant should be distributed, in approximately equal pro rata quantities, over each

and every month of the year. To have given this provision of the contract due weight the plaintiffs would have been obliged to order during each month approximately sixty-three barrels of oil if they elected the minimum basis. Their right was to order as much as approximately eighty-three barrels each month. The defendant was obliged to fill their orders monthly whether they chose to order sixty-three barrels or eighty-three barrels. Let us observe for a moment what immediately followed the execution of the contract. During the month of April, 1915, the plaintiffs in two separate orders bought twenty-five barrels of oil and no more. For their own convenience or advantage they failed to discharge their contract covenant to buy at least sixty-three barrels and declined to avail themselves of the right to purchase eighty-three barrels. Had the defendant chosen to tender the remainder of sixty-three barrels and demand the price thereof it is difficult to see how the plaintiffs could have escaped their obligation to pay. As stated, they chose not to do so. If the market price of the oil remained during the month of April and for some months thereafter practically the same as the contract price, the failure of the purchaser to order and take all of the oil he was required to do would make no substantial difference to the defendant who could sell to others and would furnish little reason for affirmative action upon its part. During no month from the beginning of the contract until August of that year did the plaintiffs order as much oil as their contract on a minimum basis required them to do and after August not again until December did their orders exceed that minimum.

Now the theory of the plaintiffs is that because the defendant did not from month to month formally assert the plaintiffs' obligation to buy by notice, tender or other action, the defendant has practically lost all of its rights under the contract because it has waivered them. On the other hand, although the first departure from the letter of the contract came from the plaintiffs and although

month by month they persisted in breaching the contract yet they have lost or waived none of their rights secured by the contract as made. As a result of the application of this theory, plaintiffs assert the contract, which when made was bilateral, with mutuality of rights and obligations, has been transformed into another, practically unilateral, which kept alive at all times their right to buy 1,000 barrels of oil at a fixed price, but to take it when and as they chose. If the doctrine that a right may be waived under certain conditions, present in all of the cases on the subject, be applicable to the facts of this case, then it must apply to the conduct of the plaintiffs as well as to that of the defendant. The latter could well answer, in response to the demand of the plaintiffs for large quantities of oil on a rising market, you have no such right because you did not exercise it at the time and in the manner provided by the contract, therefore, you have waived it and it no longer exists. We are persuaded the argument of the able counsel for the plaintiffs along this line cannot be sound.

Complaint is made of the action of the learned trial judge in refusing to permit the plaintiffs to prove the manner in which the parties had acted under similar contracts during several previous years. Why should such evidence be admitted? As already stated, no foundation whatever appears in the statement of claim for the admission of evidence, the effect of which would certainly be to seriously modify, if not to contradict the language of the new contract in writing which is the basis of this action. Again, as we have endeavored to point out, there is no ambiguity in the clauses of this contract which control the rights of the parties. We recognize, of course, the correctness and vitality of the legal proposition expressed in the opinion of Mr. Justice Frazer, in Beedy v. R. R. Co., 250 Pa. 51, in these words: "If the language of the covenant be considered ambiguous the parties themselves have put their own construction upon it by what has been done in the past." In Mc-

Millin v. Titus, 222 Pa. 500, the court was dealing with a written contract, difficult to construe because of the presence of provisions contradictory of or repugnant to each other. The general principles to be kept in mind, in construing such an instrument, are admirably stated by Mr. Justice MESTREZAT in the opening of his opinion. But it would surely lead us into error if we were to assume that everything there said must be literally applied to the consideration of a contract clear and plain in its meaning, without obscure or ambiguous language, and exhibiting no repugnant or contradictory clauses. In the very latest utterance of the Supreme Court on the subject, Tunnel Kilns v. Holt, 269 Pa. 293, we quote the following from the opinion of Mr. Justice WALLING: "Considering the entire contract its meaning is not doubtful and, therefore, we cannot consider the evidence pro and con as to the parties' own construction thereof. It is only in case of doubt or ambiguity that the parties' own construction can be resorted to: Atchinson v. Board of Publication, 266 Pa. 47; Lennox Co. v. Duncan Spangler Co., 265 Pa. 572, and cases there cited."

We are of opinion the learned court below was correct in his construction of the contract in suit and of the rights and obligations created by it as affecting the respective parties. That basic proposition settled all that was left was but the application of the contract to the fact agreed upon. This resulted in a direction to jury to find for the plaintiff in a specific sum. There is no controversy in this respect. We are persuaded the case was properly tried; the construction of the contract adopted by the court was based upon sound legal principles and the conclusion reached by him should not be disturbed.

The judgment is affirmed.