# Stegmaier *v.* Keystone Coal Company, Appellant.

*Practice, C. P.—Pleading—Allegata and probata—Statement of claim —Evidence.*

1. The allegata from which the proofs must not materially vary, and with which they must be consistent, are those averments of fact contained in the plaintiff's statement of his cause of action which, if substantiated, would entitle him to recover. If the statement contain other allegations of fact not essential to the cause of action sued upon, the plaintiff is not bound to prove them, and failure to do so will not constitute a fatal variance which will preclude recovery if the essential averments have been duly established.

*Bonds—Negotiable instruments—Bailment—Pledge.*

2. Bonds of a corporation made payable to bearer are negotiable instruments, and a person who holds them as a pledge for an overdue debt has a right to sue upon them. He is not required as in the case of the pledge of ordinary chattels, to sell them and apply the proceeds to the payment of the debt, but he has the right to sue upon them and apply as much of the net proceeds collected as may be needed to pay the debt they were to secure. In such a suit the court will not consider whether the plaintiff is entitled to the whole amount of the bonds. If he is not, he will have to account as trustee for the excess to the proper owner in another proceeding

Argued April 12, 1909. Appeal, No. 275, Jan. T., 1908, by defendants, from judgment of C. P. Luzerne Co., Oct. T., 1905, No. 283, on verdict for plaintiffs in case of Christian E. Stegmaier and Louisa S. Forve, Executors of Charles Stegmaier, deceased, v. Keystone Coal Company and Victoria Schmitt, Executrix of Estate of John A. Schmitt, deceased.

Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.
Affirmed.

Assumpsit on a bond. Before FERRIS, J.

The court charged as follows:

The testator of the plaintiffs, Mr. Charles Stegmaier, in
1905 brought an action against the Keystone Coal Company.
About a year ago Mr. Stegmaier died and Mr. Christian E.
Stegmaier and Louisa S. Forve, as executors of his will, were
substituted as plaintiffs in the case for Mr. Charles Stegmaier,
deceased. Also John A. Schmitt, who had become the pur-
chaser of certain real estate of the Keystone Coal Company
subject to a mortgage, died in 1902, and Mrs. Schmitt, his
widow, and executrix, applied to the court, by reason of the
estate's ownership of the property bound by the mortgage
securing these bonds in suit, for leave to intervene and make
defense to this action. That leave was granted by the court
and she is here as an intervening defendant.

The claim on which this suit was brought is that the de-
fendant company, the Keystone Coal Company, is indebted
to Charles Stegmaier or now to those who represent him, in a
certain sum of money being the principal and unpaid coupons
upon certain bonds of the Keystone Coal Company of which
he, Mr. Charles Stegmaier, had in his lifetime become and was
at the beginning of the suit, the lawful, legal owner and holder;
and so the matter stood until the intervening defendant asked
the court to require the plaintiffs to file a bill of particulars.
This bill was required so that the defendant would have in-
formation to prepare for a defense. The bill of particulars was
filed and set forth the manner in which it was claimed by the
plaintiff that the fifteen bonds upon which the suit was brought
came into his possession. Briefly, that bill of particulars as-
serted, that as to ten of the bonds, each of the bonds being
of the denomination of $1,000, they were handed to Charles
Stegmaier or Charles Stegmaier & Son, by Mr. S. L. Brown,
five of them as collateral security for the indorsement by Steg-
maier & Son, afterwards by Charles Stegmaier of a certain

note made by Mr. Brown and of renewals of that note from time to time; together with an understanding that on nonpayment of the note, if Mr. Stegmaier was obliged to pay, the bonds put up as collateral should become his, belong to him, he should have the absolute estate in that property, and title to it. So also with the second five bonds of the first ten that I referred to; they were also upon another date in 1896 delivered as collateral security for a note then made by Mr. Brown and with a like understanding as averred. The third batch of five bonds it is alleged in the bill of particulars, were given to Mr. Stegmaier or Stegmaier & Son by Mr. Brown in October, 1898, as collateral security for Stegmaier's indorsement of a note not made by Mr. Brown but made by the Keystone Coal Company, of which note Mr. Brown was himself an indorser and that this batch of bonds also were delivered to Mr. Stegmaier as collateral security, with the understanding that if he, the pledgee of the bonds was obliged to pay that note of the Keystone company, then the bonds should belong to the pledgee after such payment. So the case stood on the pleadings. We then have the parties in court on the trial, and upon the trial, as you will remember, the plaintiff offered in evidence the several fifteen bonds upon which they claim the right to recover in this action,—bonds 9, 10, 11, 12, 13, 20, 78, 79, 80, 86, 87, 88, 89, 90 and 100. One of these bonds was read in your presence and it was agreed that they were all of like tenor and effect. These bonds provided for payment to Thomas Ford, trustee, or bearer. There was also a provision in the bond that on failure of the company obligor in the bond to pay interest due as per any coupon on the bond, upon presentment of it and a failure for ninety days thereafter, to pay, then the bond should be considered as matured and might be proceeded upon as though the entire period for which the bond was given had expired. No evidence was given of an actual demand for payment of any particular coupon, but evidence was offered, which under our law dispenses with a formal and actual demand; that is to say, evidence that no provision was made for the payment of the interest evidenced by these coupons, at the place where they were, upon their terms, made payable. A corporation

bond made payable to bearer, as these were, is a negotiable instrument; quite as much so as a promissory note made payable to bearer would be. The possession of such an instrument is prima facie, as we term it in law, evidence of ownership upon the part of the person who has it in possession. These bonds were in the possession of the executors of Mr. Stegmaier's estate and were produced here by them. The prima facie evidence, therefore, of ownership of these bonds and the right to them as absolute owners was made out and for that reason the court refused to grant a motion for a compulsory nonsuit. [The view which the court took of the bill of particulars was, that it did not, in the first instance, impose upon the plaintiff the burden of proving affirmatively everything which was set forth in the bill of particulars, but that all the burden which the plaintiff had to assume in the outset of the case, was to make out a prima facie case, enough to show a prima facie right to recover. Then the burden shifted over to the defendants. It was then for the defendants to show that the prima facie right which appeared to exist by reason of the possession of these bonds, did not in reality exist; the burden was upon the defendant to show by some evidence a state of facts which was inconsistent with the absolute ownership of Charles Stegmaier of these bonds at the time suit was brought.] [3] [Then as an admission of how these bonds came into the possession of Charles Stegmaier and by what right he claimed them, the bill of particulars was offered in evidence. Then followed the evidence on the part of the defendant, in pursuance of the burden which was cast upon them of showing that these bonds did not belong to Charles Stegmaier and that he had no such right to recover as his possession would indicate; and then evidence on the part of the plaintiff, in rebuttal, to uphold the right of Mr. Stegmaier to these notes. The defendant, in the opinion of the court, succeeded in showing that the possession of these bonds did not evidence an absolute ownership of the bonds in Mr. Stegmaier, but that these bonds were in the hands of Mr. Stegmaier at the time of his death as collateral security for something. That in the opinion of the court is as far as the rebuttal of the prima facie case of the plaintiff went.] [4] [In

the opinion of the court no evidence was produced to show that Charles Stegmaier knew that the person who pledged these notes to him had no right to do so; therefore, all that the evidence on behalf of the defendant could show would be that instead of being the absolute owner of these bonds, Mr. Stegmaier was the qualified owner of the bonds; that is, he was owner of them upon certain conditions and for certain purposes only, namely, as collateral security. The testimony in rebuttal tended to show—and I think some of that of the defendants tended to show—that certain notes which had been given and which it is claimed these bonds were given as collateral for, were not paid, were protested and that after protest Mr. Stegmaier took them up and paid the value of them, namely, $15,000 and interest.] [5] A holder of such securities as these, as collateral for an indebtedness, or a liability, may become the absolute owner of them upon failure of the pledgor to pay the debt for which they were pledged, by giving a notice to the pledgor to redeem his pledge, in effect saying to him I hold these bonds, let us say, as collateral security for your undertaking. You have failed, I claim the right to make the collateral which I hold available to collect upon it. I choose to do so by selling these bonds and I give you notice to redeem these bonds within a certain reasonable time fixed, otherwise I shall sell them. On giving such notice and on failure of the pledgor to redeem his pledge, then the pledgee would have a right, on proper advertisement, to sell these bonds and whoever bought at that sale would become the absolute owner of them. [He is not obliged to do that in the first instance, certainly not so far as the evidence in this case is concerned, where the property pledged is a negotiable instrument or instruments. These bonds were transferable by mere delivery, being made payable to bearer. They were instruments for the payment of money, each one stating that it was an obligation upon the part of the Keystone Coal Company to pay the sum of $1,000 at certain times or under certain circumstances, to Thomas Ford, trustee, or bearer, and then providing for certain action by the trustee to put these bonds into circulation. Each bond shows an indorsement by the trustee which

in effect puts them in circulation so that these bonds were payable to bearer. As just stated they were for the purpose of evidencing a debt. The holder of them as collateral need not sell them in cases of that kind, but he may still continue to retain them in his possession as a pledge, in other words, as a trustee, and holding them as collateral security, he may proceed to collect upon them.] [6] To make this clear, let us suppose that instead of bonds of this character, a promissory note was given to Mr. Stegmaier as collateral. Let us say Mr. S. L. Brown's or somebody else's promissory note was given as collateral by Mr. Brown to Mr. Stegmaier and that note was to come due in sixty days from that time, and that the person who owed the money on that note was one who at the time was deemed to be responsible but whose credit possibly was not of the best. It would be the duty of the holder of that note as collateral security to proceed upon it to collect it, to present it for payment. If it was not paid and had an indorser upon it, to protest it and if necessary to sue the maker of the note of the indorser, and collect the money. He may not be neglectful, because if he were and because of that neglect that money was not eventually collected, and the pledgee lost it, the pledgor could hold the pledgee for it. [I merely instance this as an illustration of the principle that the holder of collateral securities for the payment of money may collect the money on them and in some cases it is his duty to do so. That, I take it, was Mr. Stegmaier's position at the time this suit was brought. He was the holder of these bonds as collateral security, under the evidence in this case—the prima facie case made out and the failure of the defendant to successfully rebut it. He therefore had a right to bring an action of assumpsit against the Keystone Coal Company for the recovery of the amount of these bonds.] [7] It must be shown, of course, that they were due, either by their terms or by reason of nonpayment of the interest coupon. That has been done. [So that as the case stands we think the plaintiff is entitled to recover in this action. If he obtains judgment under the verdict, which we direct you to render and proceeds upon that to sell the mortgaged property, his right in a distribution of the funds

from the sale of that property would be, of course, measured by the amount of money which he would be entitled to receive on the notes which he took up and paid and the interest, together with the rights of other people as holders of these bonds who might be equally interested with him,—might have equal liens with him under the mortgage on the property sold. So that this suit does not finally decide the matter as to how much money shall be recovered eventually on this proceeding and proceedings which may result from it. But so far as this particular suit is concerned, we instruct you that your verdict should be for the plaintiff for the amount of these bonds and the unpaid coupons attached, up to the date of trial, which I understand to be $24,784.50.] [1]

[What we have said to you makes it practically unnecessary to answer the points that have been presented by counsel with the request that the court instruct you as therein stated. So that we do not pass upon these points specifically, or answer them either by affirmance or denial specifically, except the fifth point presented by plaintiffs, which reads as follows:

5. Plaintiffs, under all the evidence, are entitled to recover upon the bonds sued upon, the face value of the said notes and interest thereon from the date of the payment of the same by Charles Stegmaier.

That we do not affirm as it is stated, but we do affirm it with the qualification that the plaintiffs are entitled to recover the face value of the bonds and unpaid coupons attached, up to the date of trial, as against the Keystone Coal Company but not as against Victoria Schmitt.

We therefore direct you to find a verdict for the plaintiff and against the Keystone Coal Company, for the sum of $24,784.50.] [2]

Verdict and judgment for plaintiff for $24,784.50. Defendants appealed.

*Errors assigned* among others were (1–7) above instructions, quoting them.

*John McGahren*, with him *Edmund G. Butler*, for appellant.—The presumption that the plaintiff by his possession of

the bonds was an innocent holder for value was rebutted and overcome by his own admissions contained in his bill of particulars stating the basis of his title, which should be supported by affirmative proof. The presumption of absolute ownership was overcome when the defendants offered in evidence the plaintiff's bill of particulars as the court very properly held. The scale was then turned and it became the duty of the plaintiff to go further and offer additional evidence to sustain the material averments in his bill of particulars: Adams v. Pease, 113 Ill. App. 356; Pusey v. Wright, 31 Pa. 387.

The learned court should have instructed the jury that if they found under the evidence that the notes secured had been paid by Mr. Schmitt, the owner of the property mortgaged to secure the bonds, and by his executrix, the intervenor in this case, that then the plaintiff's lien upon the bonds was discharged and that the executrix was entitled to a return of the same to her: Neiler v. Kelley, 69 Pa. 403; Diller v. Brubaker, 52 Pa. 498; Esser v. Linderman, 71 Pa. 76; Sitgreaves v. F. & M. Bank, 49 Pa. 359.

*William S. McLean*, with him *George R. McLean* and *William S. McLean, Jr.*, for appellees.—Presumption was that bonds belonged to Brown, and Stegmaier and Son, by reason of their indorsements, were holders for value: Rice v. Southern Penna. Iron & R. R. Co., 9 Phila. 294; Gibson v. Lenhart, 101 Pa. 522; Justice v. Stroup, 4 Phila. 346; Carpenter v. Rommel, 5 Phila. 34; Kerr v. City of Corry, 105 Pa. 282.

Holders of negotiable collateral security may sell the same upon due notice or bring suit thereon: Davis v. Funk, 39 Pa. 243; Duffield v. Miller, 92 Pa. 286; Lishy v. O'Brien, 4 Watts, 141; Trust Co. v. Haser, 199 Pa. 17.

No demand before suit brought was necessary: R. R. Co. v. Johnson, 54 Pa. 127.

There was no material variance between statement and proof as to ownership of the bonds: Lishy v. O'Brien, 4 Watts, 141; Trust Co. v. Haser, 199 Pa. 17; Moore v. Baird, 30 Pa. 138; Hanna v. Holton, 78 Pa. 334.

The suit was well brought on the bonds, although the prop-

erty bound by the mortgage cannot be sold on execution issuing upon the judgment obtained on the bonds: Western Penna. Hospital v. Mercantile Library Hall Co., 189 Pa. 269.

OPINION BY MR. JUSTICE BROWN, June 22, 1909:

Notwithstanding the twenty-one assignments of error and the very elaborate argument of the learned counsel for appellants, this case is a very simple one, and the only real question before us is whether the court below, with the evidence before it, properly directed a verdict against the Keystone Coal Company. The action was brought by Charles Stegmaier against that company to recover $15,000 and interest on fifteen of its coupon bonds. These, for $1,000 each, were payable to Thomas Ford or bearer and were secured by a mortgage of the company's property and franchises to the said Ford as trustee for the bondholders. The statement of plaintiff's claim contained an averment that the bonds were due and payable and belonged to him. The property of the coal company covered by the mortgage became vested in John A. Schmitt, and, upon his death, Victoria Schmitt, his executrix, was, upon her petition, allowed to intervene as a defendant. On her motion a bill of particulars was filed, in which the plaintiff averred that he had become the owner of the bonds by their delivery to him by one S. L. Brown as collateral security for his indorsement of two of Brown's promissory notes for $5,000 each and of one of the Keystone Coal Company for $5,000; that the bonds were pledged for the indorsement of each note and its renewals, with the understanding in each case that if the plaintiff paid the note or notes the bonds should belong to him. On the trial the substituted plaintiffs, the executors of the will of Charles Stegmaier, produced and put in evidence the bonds sued upon, with proof that they were due and payable before suit had been brought. This made out a prima facie case against the defendants, who thereupon, upon the court's refusal to enter a judgment of nonsuit, put in evidence the plaintiffs' bill of particulars, to show admissions by them as to the manner in which they claimed the title to the bonds had been acquired. Further testimony in the case

tended to prove that Charles Stegmaier, at the time he brought the suit, was the bona fide holder of the bonds as collateral security for his indorsements of the notes specified in the bill of particulars, which he had been obliged to pay; that when he took these bonds there was nothing to show that he knew Brown, who had pledged them to him, had no right to do so. The court, in its opinion refusing a new trial and judgment for the defendants non obstante veredicto, properly said that no other conclusion could be fairly drawn from the evidence in the case.

One of the contentions of counsel for appellants is that a recovery ought not to have been permitted, because of the variance between the allegations and the proofs. In the statement the allegation is that the bonds belonged to the plaintiff at the inception of the suit; the averment in the bill of particulars is that they were held as collateral security under conditions which made them, at the time suit was brought, the absolute property of the plaintiff. The proof was that they were held as collateral security, and this was proof that they belonged to Stegmaier for the purpose for which they had been pledged. If either the statement or the bill of particulars contained averments not essential to a recovery, the plaintiffs were not bound to prove them. As to this the learned trial judge correctly said: "The allegata from which the proofs must not materially vary, and with which they must be consistent, are those averments of fact contained in the plaintiff's statement of his cause of action which, if substantiated, would entitle him to recover. If the statement contain other allegations of fact not essential to the cause of action sued upon, the plaintiff is not bound to prove them, and failure to do so would not constitute a fatal variance which would preclude recovery if the essential averments have been duly established: Grubb v. Mahoning Nav. Co., 14 Pa. 302; Sidwell v. Evans, 1 P. & W. 383; Ins. Co. v. Flynn, 98 Pa. 627; Hastings v. Speer, 34 Pa. Superior Ct. 478."

The bonds were of the same character as commercial paper, negotiable instruments passing from hand to hand by delivery or indorsement, and being of such a character, they gave to

the holder of them a right to sue upon them. He was not required, as in the case of the pledge of ordinary chattels, to sell them and apply the proceeds to the payment of the debt, but had the right to sue upon them and apply as much of the net proceeds collected as might be needed to pay the debt they were to secure: Lishy v. O'Brien, 4 Watts, 141; Delaware County Trust, etc., Company v. Haser, 199 Pa. 17; Union Trust Company v. Ridgon, 93 Ill. 458; Colebrook on Collateral Securities (2d ed.), sec. 117.

Whether the plaintiffs, if they should recover the whole amount of their judgment, shall be permitted to retain the same is not a question involved in this proceeding. If the bonds were held simply as collateral, and that was the understanding between the pledgor and the pledgee, the appellees will have to account, as trustees, to the representatives of Brown or to any other legal claimant to the surplus proceeds. This will be the subject of another proceeding, if there is a liability to account. The judgment here concludes no claimant who had an equity of redemption in the bonds.

The assignments of error are overruled and the judgment is affirmed.