## Moyer v. Blue Mountain Electric Co., Appellant.

Argued September 27, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*C. H. Ruhl,* for appellant.—Allegations and proofs must correspond: Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Stewart v. DeNoon, 220 Pa. 154; Kehres v. Stuempfle, 288 Pa. 534, 539.

When the facts are not substantially disputed, it is the duty of the court to determine them and so instruct the jury: Hoag v. R. R. Co., 85 Pa. 293; R. R. v. Trich, 117 Pa. 390; Scott v. R. R. Co., 172 Pa. 646.

*Robert Gery Bushong,* with him *Harry S. Craumer,* for appellee.—There was no variance between the allegations in the statement of claim and the proof: Stegmaier v. Coal Co., 225 Pa. 221; Thomas v. R. R., 194 Pa. 511; Hastings v. Speer, 34 Pa. Superior Ct. 478.

The breaking of the rotten pole and the consequent breaking of the common or neutral wire was the proximate cause of the fire: Boggs v. Jewel Tea Co., 266 Pa. 428; Murray v. Ellis, 112 Pa. 485.

OPINION BY MR. JUSTICE SIMPSON, November 26, 1928:

The action below was trespass for negligently setting fire to and destroying plaintiff's hotel; and, on this appeal, defendant asks us to reverse the judgment in plaintiff's favor, on the following grounds only: (1) because the evidence did not prove defendant was negligent; (2) because the trial judge erred in refusing defendant's point for binding instructions in its favor; (3) because the court in banc erred in overruling its motion for judgment non obstante veredicto; and (4) because, upon the evidence produced, even if otherwise sufficient, no recovery can be had, since it substantially varied from the averments of the statement of claim. It will be noticed that the first three of these reasons challenge only the sufficiency of the evidence to require its submission to the jury. Hence, in considering them, there be-

ing no writings to interpret, we must accept as verity all the testimony and inferences fairly deducible therefrom, which tend to establish plaintiff's claim, and reject all antagonistic thereto: Caldwell v. Continental Trust Co., 291 Pa. 35; Baumgartner v. P. R. R. Co., 292 Pa. 106. The relevant facts hereinafter stated for the purpose of supporting the judgment, are all ascertained by the application of this rule.

Plaintiff was the owner of a frame hotel, built on a stone foundation which rose to about ten inches above the ground, the roof of the building being covered with tin and the sides with galvanized steel sheathing. At the time the fire began, plaintiff was asleep in an upper room of the hotel, was awakened by the smell of smoke and came down stairs to investigate. He found the fire raging between the outside metal sheathing and the wooden boards of the wall of the kitchen, at a point where the hotel service wires of defendant's electric light line swayed against the sheathing, as it was then doing and theretofore often had done, and not in any room of the house, nor at the hotel switchboard and meter to and through which went the wires carrying the electric current. In fact, there was nothing anywhere in that room which could have caused the fire. Becoming affected by the smoke, he opened the door leading to the outer air, received an electric shock and was flung a distance of about eight feet. Recovering himself, he saw that electric sparks were leaping from joint to joint of the sheathing, and that a tree, located about 32 feet from the building, was burning at a point near the ground, to which ran a guy wire from the metal top of the kitchen chimney. An outhouse nearer to the hotel than the tree, and in substantially the same direction, but not connected with the building or the electric wiring, was not even scorched.

From these facts it is evident the jury could properly have found that the fire was not of incendiary origin, and was not caused by anything within the building, but

must have resulted from defendant's electric current. Indeed, this conclusion does not appear to have been seriously questioned at the trial; but whether or not it was, the evidence was ample, under the rule cited, to establish these facts. We are thus brought to the question, in answering which the contest was principally waged: Was the current which caused the fire the normal one of 110 volts, usually passing over the hotel service wires, or was it a current of much greater voltage? If the latter is the fact, then defendant is liable, for it offered no excusatory evidence, nor does the record disclose any, for "when its customer is injured by an excessive current of electricity entering his premises on the company's wires, the burden is upon the latter to offer such an explanation as will relieve it of responsibility. Under such circumstances the doctrine of res ipsa loquitur applies": Derrick v. Hardwood Electric Co., 268 Pa. 136, 142.

Still applying the rule stated at the beginning of this opinion, the jury could and probably did find the following facts: Defendant's electric light line ran along the opposite side of the public road on which plaintiff's hotel faced. It was installed some fourteen years before the fire, and consisted of a series of poles carrying five wires. The upper one, fastened to the top of the poles, was an uninsulated neutral wire, the purpose of which was to carry the current back to the plant after its, the current's, work was done. Below it was a cross-arm fastened to the poles, on either end being insulators, attached to which were insulated high tension wires carrying 2,200 volts. These were the dangerous wires of the line. Below them were two brackets, also fastened to the poles, each having on it a glass insulator, attached to which was an insulated low tension wire carrying 110 volts. At the distance of about 450 feet from the hotel, one of the poles had on it a transformer, intended to step down the current of 2,200 volts, running along the high tension wires, to the 110 volts of the low

tension lines. The current was then carried by other insulated low tension wires to another pole, located about 54 feet from the corner of the hotel; from there to two brackets with glass insulators, fastened to the side of the building; thence along it about 16 feet to two other similar brackets; and then to and through a window frame, protected by insulation tubes, to a switchboard and meter. All those wires were erected by, belonged to and were under the care and control of defendant; the electricity used by plaintiff in the hotel being delivered by defendant to plaintiff at the meter, and therefrom carried by lighting wires, belonging to plaintiff, to the various electric lights in the building.

As already suggested, the wires between the two sets of brackets on the outside of the hotel were so loosely hung, and so near the building, that the wind caused them to sway to and fro and strike against the metal sheathing, and they were doing this at the time of the fire, as they had commonly done whenever the wind was blowing. For some time prior to the fire, much of the insulation on the high and low tension wires on the poles in the road, had become frayed and had fallen off. One of these poles, further from the hotel than the transformer, had become rotten near the point where it entered the ground, and, by reason thereof, about a day before the fire, broke entirely off, breaking in turn the uninsulated neutral wire attached to it at the top. The insulated high and low tension wires, which did not break, supported the pole so that it leaned over at an angle of about forty degrees, but did not fall flat on the ground. When the broken neutral wire fell, it came in contact with both the high and low tension lines, sometimes continuing its course until it reached the ground, when sparks issued from it and burned the grass in the immediate neighborhood. At other times, the wire did not touch the ground, and there was no such burning, but then a large current of electricity passed from the high tension wires into the low tension wires, and finally

reached and traveled along the service wires running to the hotel. It could have occurred without the current passing through the transformer, though, as defendant's witness said, this would possibly cause trouble within it and explain why sparks then shot from it followed by a cracking sound, plainly audible to those near by. The location and method of placing the hotel service wires was admittedly a weakness of the construction and would permit the current, whether of high or low tension, to pass to the metal sheathing of the hotel, if the insulation was worn through. One of plaintiff's witnesses testified that this would result also if the current on those wires was of high voltage, even though the insulation was unbroken, but not if the current was of 110 volts only. As a consequence of that faulty construction, when the swaying wires touched the sheathing, on the night of the fire, the 2,200 volt current then on them passed to the sheathing and set fire to the adjoining woodwork of the hotel.

From the above facts the jury was justified in finding that the hotel was set on fire by defendant's electric current reaching there by reason of its negligence. Indeed, the theory of the defense, persistently urged at the trial and here, was that it could not have occurred as the jury found it did, if defendant's appliances had been in proper condition. Certainly the rotten pole, and the frayed and broken-off insulation on the dangerous high tension wires, indicated negligence, which, as they resulted in causing the fire, defendant had the burden of explaining, if it wished to escape liability: Derrick v. Harwood Electric Co., supra. In place of meeting this legal requirement, it practically limited itself to contending that the fire might have been caused by the usual current of 110 volts on the house service wires, though one of its witnesses admitted this was only a remote probability. On the other hand, plaintiff's witnesses asserted it could have been caused only by a much higher voltage passing along and from the house service

wires to the metal sheathing of the building; a conclusion which, on this appeal, we must accept as true.

We are thus brought to the last of the four points referred to at the beginning of this opinion, namely, Must there be a reversal because the evidence relied on for recovery substantially varies from the averments of the statement of claim? It is at least doubtful whether this question is covered by any of the assignments of error; if not, it is beyond our field of inquiry, though suggested in the statement of questions involved: Com. ex rel. v. Snyder, 261 Pa. 57; Com. ex rel. v. Crow, 294 Pa. 286. Appellee makes no point as to this, however, and hence we will consider the question as if it was involved in the request for binding instructions made at the trial.

The principal complaint in this regard seems to be that plaintiff averred, but did not prove, that "the transformer was not grounded in accordance with the standards set by modern scientific electrical engineers and consequently the full current flowed through the low tension wires to the poles opposite the plaintiff's hotel and thence along the wires leading to the said hotel." There was no such proof; but defendant itself proved that the current, if it came from the high tension wires, —as we have shown there was evidence it did,—need not have entered the transformer in order to reach the house service wires, and, if it did, and the transformer was in proper condition, such a current could not have passed through it and onto the wires leading to the hotel. As we have further shown, however, there was ample evidence to sustain the finding that the 2,200 volts did pass along the service wires leading to the hotel, and hence the jury was fully justified in concluding also that there was something the matter with defendant's appliances in one or the other of the respects stated.

In Stegmaier v. Keystone Coal Co., 225 Pa. 221, 230, we said, and cited a number of cases for it, that "the allegata from which the proofs must not materially

vary and with which they must be consistent, are those averments of fact, contained in the plaintiff's statement of his cause of action, which, if substantiated, would entitle him to recover. If the statement contains other allegations of fact, not essential to the cause of action sued upon, the plaintiff is not bound to prove them, and a failure to do so would not constitute a fatal variance which would preclude recovery if the essential averments have been duly established." This principle was cited and followed in Com. ex rel. v. Camp et al., 258 Pa. 548, 553, and is applicable whether or not those allegations are immaterial, or concern an additional act of negligence not essential to a recovery. Probably it will be conceded, certainly it is true, that if plaintiff had stated defendant's various negligences disjunctively, as in legal effect he did, he could recover upon proof of any one of them as the proximate cause of the injury (Thomas v. Central R. R. Co. of N. J., 194 Pa. 511) and where, as here, all the negligent acts which result in the injury are acts of the defendant, he will be held liable for the result no matter which of them may have been technically its proximate cause.

Defendant's final contention is that since one of plaintiff's witnesses testified the immediate cause of the fire was probably the wearing off of the insulation on the house service wires, this became the proximate cause, and, as it was not averred in the statement of claim, no recovery should be allowed. But the "immediate cause" of an event, is not necessarily that which the law considers its proximate cause; and beyond this there was other testimony that the fire could have resulted without such abrasion (of which, indeed, there was no evidence), and the jury's resolution of that difference of opinion is conclusive here.

This record discloses another matter to which we think attention should be called. Instead of reading and answering the points before the general charge to the jury, thereby rendering them practically valueless,

or after it was over, thereby confusing the jury, the trial judge read into the body of the charge such of them as he intended to affirm, when he reached the point therein to which they were appropriate, and all others he refused without reading. The result was that the charge to the jury was a logically consecutive statement of the facts and the law, "a consummation devoutly to be wished" in every complicated case. Indeed, the trial judge might have simply ignored the refused points, since their subject-matter, so far as important, had been properly stated in the general charge: Warruna v. Dick, 261 Pa. 602; Pringle v. Smith, 289 Pa. 356.

The judgment of the court below is affirmed.