# McManus v. Pennsylvania Electric Co.

*James A. Quisenberry*, for plaintiff.

*Quinn, Leemhuis, Plate & Dwyer*, for defendant.

ROBERTS, P. J. (Specially Presiding), March 5, 1957.—Defendant has appealed from our order refusing motions for new trial and judgment n. o. v. We file this opinion in support of that order.

Plaintiffs brought this action to recover damages for total destruction by fire of their dwelling, garage building and contents, which they allege was caused by the negligence of defendant, their supplier of electric current. The jury returned a verdict in favor of plaintiffs in the amount of $16,500. Plaintiffs contend the fire was caused by excessive current entering the northwest corner of the garage building at service entrance area, over defendant's wires, shortly after 3:10 p.m. on March 18, 1954. To support this contention plaintiffs rely upon circumstantial and expert evidence. It was shown that immediately prior to and at the time of the fire, defendant was in the process of

moving its power lines to new poles in front of plaintiffs' property. From one of these poles, three service wires extended to the service entrance at the northwest corner of plaintiffs' garage. A plaintiffs' witness testified that he saw a flash on the pole and smoke coming from the northwest portion of the garage. Another witness testified that she observed smoke and flames in that area of the garage, and saw one of defendant's linemen coming from the garage and heard him call to a lineman on the pole, "short", and either "cut" or "pull the wires".

Shortly after the fire was discovered a lineman of defendant, working on the pole, cut these wires. After the fire, one of the plaintiffs found in the wreckage in the garage, under the service entrance area, a certain piece of entrance conduit with wires of single phase installation and various parts or pieces of fuse clips of single phase system, alleged to have been enclosed in a metal switch box. These parts were examined by plaintiffs' electrical engineering expert, who testified that the copper wires had been fused and disconnected · by the action of intense heat, and had been subjected to a higher temperature than the conduit or the surrounding objects, that the heat source was local within the box from an arc discharge between the conductors, which provided the higher temperature to the wires alone, and not to the conduit, and that the condition of the parts could not have been caused by the fire because: (1) The fire would not reach sufficient temperature to melt the copper; and (2) the items examined were not uniformly burned. This expert expressed the opinion that the damage to the parts indicated that they were subjected to excessive temperature developed by voltage of more than 1,000 volts created by contact between the primary and secondary wires, that their damage could not be produced with normal

voltage by any fault or defect within plaintiffs' wiring system or premises.

Defendant's testimony sought to establish that there was no connection between its service and plaintiffs fire, that no voltage above normal was carried over its lines to plaintiffs' premises, that if there had been a contact between its high voltage and service wires there would have been a bright flame and a roar, with damage to the wires and interruption of service to customers on the same circuit, as well as damage to their small electrical appliances, that the protective equipment (reclosure and fuses) would have been activated. Defendant's evidence, tending to support its defense, consisted of testimony that the fire originated in the southern part of the garage and testimony of its linemen and ground crews, that they observed no contact between the primary and secondary wires, saw no sparks or wire damage, heard no noise of wire contact. Four customers, on the same circuit serving plaintiffs, testified they observed no disturbance or interruption of their electrical service nor damage to their electrical appliances. Defendant's records for the day of the fire indicated that it received no complaints or service calls from customers in the area, that its protective or reclosure equipment recorded no interruption of service and that the ground at the northwest corner of the garage would prevent the entrance of excessive current.

In rebuttal, plaintiffs' electrical expert testified that the sudden surge of excessive current caused by contact between the primary and secondary wires would be of microsecond duration, and that it would be over before defendant's reclosure equipment, geared to 3/100ths of a second, could have recorded such event, that this brief interruption of service would not be observed by other customers. The effect of his rebuttal

testimony was that defendant's evidence did not preclude nor make impossible excessive current as the cause of the fire in accordance with plaintiffs' theory of the occurrence.

Defendant complains that the trial court erred in the following portion of its charge applying the exclusive control doctrine to the case: "If, however, you find as a fact, by the fair preponderance of the evidence, that the garage building was fired by excessive electrical current entering plaintiffs' premises through defendants' wires, then under such circumstances—and only under such a finding of fact—would there then arise a presumption that the supplier did not use due care, and the burden in that event would be upon the defendant to offer such explanation as will relieve it of responsibility".

This controversy hinges on the cause of the fire. If the fire was caused by excessive current entering plaintiffs' premises over defendant's wires, as plaintiffs contend, then the exclusive control doctrine applies: Mack v. Reading Company, 377 Pa. 135. The charge clearly informed the jury that the doctrine is applicable oniy if based upon a finding that the fire resulted from high voltage electrical current carried over defendant's line to the property destroyed, that without such a finding the exclusive control principle did not apply.

Conflicting testimony was presented as to the cause of the fire, and even though defendant offered a strong defense, and plaintiffs' case was based upon circumstantial and expert evidence, nevertheless, it was the duty of the jury to determine which of the contradictory versions it would accept. This, as well as other conflicts in the testimony, were questions of fact for the jury to decide: Nanty-Glo Boro. v. American Surety Company, 309 Pa. 236. Plaintiffs offered sufficient competent evidence, if believed by the jury, to

establish that the fire was caused by excessive current. The jury by its verdict found that the fire which destroyed plaintiffs' property was caused by excessive current. Upon such a finding the exclusive control doctrine is clearly applicable: Mack v. Reading Company, supra.

In Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497, defendant was engaged in repairing plaintiff's house roof, his workman took up to the roof, a fire pot, from which sparks escaped and set fire to plaintiff's house. In allowing recovery, the court said, pages 503-504: "There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred. . . . In Sherman and Redfield on Negligence, secs. 59 and 60, the rule applicable to the case is thus stated: 'The accident, the injury and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence and thus cast on the defendant a burden of establishing his freedom from fault. When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care'."

Since the Shafer case, the rule of exclusive control has been quoted and followed in a multitude of cases where the evidence as to the cause of the harm was peculiarly and exclusively within the possession of defendant and not equally available to both parties. In Mack v. Reading Company, supra, at 139, the nature and purpose of the doctrine is stated: "In actions to recover for damages caused by negligence the burden is upon the plaintiff to furnish proof of such negligence, but it is not necessary, or indeed possible, in all cases to establish

such proof by positive testimony, and what the rule of 'exclusive control' does in situations where it is applicable is to shift to the defendant the burden of coming forward with the evidence. It was said in Janock v. Baltimore & Ohio R. R. Co., 252 Pa. 199, 200, 201, 97A 205, 206: 'There are many instances where the burden resting on plaintiff may be met by proof of circumstances from which the jury are permitted to infer negligence on the part of defendant. . . . To require plaintiff to prove affirmatively the exact source of the accident would usually in cases of this kind defeat recovery, however gross the negligence, as the person injured seldom has means of either knowing or discovering absolutely the defect in equipment or delinquency on the part of employees, both of which are entirely within the control of the defendant'. The doctrine of 'exclusive control' is designed to meet situations of that kind . . ." .

Recently this doctrine was used in Eckman v. Bethlehem Steel Co., 387 Pa. 437. There plaintiff, while engaged in installing safety or pop-off valves on a live steam line in defendant's boiler room, was scalded by suddenly escaped steam from the opening in an adjoining escape line, equipped with manually operated gate valves and also pop-off valves operated automatically through steam pressure. It was held that control of the steam generating plant and of the amount of steam or its pressure going into the line, were solely in defendant and its employes, thus the necessary elements required for the application of the exclusive control doctrine were present.

Here the cause of plaintiffs' harm, the excessive current, was solely within the exclusive control of defendant and its employes; they controlled the electrical generating plant, the source of current, the transmission lines and the amount of voltage or current carried

by defendant's lines to plaintiffs' premises. The high voltage or excessive current was exclusively within the control and management of defendant just as the firepot in the Shafer case, and the steam pressure in the Eckman case. All the elements necessary for the application of the exclusive control doctrine being present, the challenged instruction correctly states the governing law on the responsibility of a supplier of electric power toward a customer whose property is damaged as a result of high voltage current entering his premises over the supplier's wires. The court's charge in the light of plaintiffs' evidence is in strict accord with the controlling authorities: Derrick v. Harwood Electric Co., 268 Pa. 136; Moyer v. Blue Mount Electric Co., 294 Pa. 265; Fox v. Keystone Telephone Co., 326 Pa. 420.

The application of the exclusive control doctrine relieved plaintiffs of the burden of proving, in the first instance, the specific art of negligence of defendant and cast upon defendant the burden of showing that it had not been negligent. If the evidence offered by defendant, seeking to establish that only normal current was carried through its wires to plaintiffs' premises, had been believed and accepted by the jury, defendant would have been relieved of the burden of responsibility resting upon it. It was the duty of defendant, against whom the presumption of negligence operated, to produce evidence sufficient to satisfy the jury of defendant's freedom from negligence; the risk of nonpersuasion was with defendant. Defendant's proof was not indisputable or uncontradicted, nor did it incontrovertibly establish the scientific impossibility of plaintiffs' theory of the cause of the fire. The determination of this issue, as well as the credibility of the witnesses, was solely for the jury. The persuasive impact of the defense was exclusively for the jury:

Nanty-Glo Boro. v. American Surety Company, supra. It being the province of the jury to believe or disbelieve the evidence, the court could not have declared as a matter of law that defendant's evidence had to be accepted by the jury and that, therefore, the presumption of negligence against defendant was dissipated.

Defendant contends also that the trial court erred in affirming plaintiffs' four points for charge. The first and second points deal with the exclusive control doctrine, and in the light of plaintiffs' evidence those points correctly state the applicable law. The third point correctly states that plaintiffs are not required to eliminate or exclude every possible cause of the fire. The sufficiency of circumstantial evidence is correctly stated in the fourth point. We find no error in the affirmance of these points: Connor v. Hawk, 387 Pa. 480.

Defendant's final contention is that the trial court erred in the following instruction as to the burden of proving contributory negligence: "The burden of proving contributory negligence on the part of the plaintiffs rests upon the defendant. When you come to decide whether there was or was not contributory negligence on the part of the plaintiffs, you take into consideration all of the evidence in the case, both that given on the part of the plaintiffs and that which was given on the part of the defendant, and on all the testimony in this case you will decide whether or not the plaintiffs were contributorily negligent. As you weigh that evidence, you must keep in mind that the burden is on the defendant to persuade you by the fair weight of the evidence that the plaintiffs were contributorily negligent. If the defendant fails in that burden, then, of course, the right of plaintiffs to recover is not lost because of contributory negligence."

Defendant argues that while the instruction is correct in the ordinary negligence case, it is erroneous in the instant case in which the exclusive control doctrine is applied. With this contention we do not agree. We know of no authority which supports defendant's contention, nor do we see any valid or logical reason for applying different standards of proof, in establishing contributory negligence depending upon the method by which defendant's negligence is proved. We find nothing in prior appellate decisions to support such a contention. In our view, so far as proving contributory negligence is concerned, it makes no legal difference whether plaintiffs prove defendant's negligence by the application of the exclusive control doctrine or by specific acts of negligence; all that is required of plaintiff, in this respect, is to present a case free from contributory negligence. In Hepler v. Hammond, 363 Pa. 355, 356, the court in passing on instructions concerning contributory negligence, said: " . . . the rule is sometimes stated to be that a plaintiff must present a case free of contributory negligence. But this does not mean that plaintiff has the burden of proving that there was no contributory negligence. The burden of proving that defense is on defendant." This principle the trial court correctly applied.

It should be noted that plaintiffs' evidence, if believed by the jury, was clearly to the effect that plaintiffs' were completely free of contributory negligence; no evidence appears in plaintiffs' case that would support a finding of contributory negligence on their part. In the absence of evidence in plaintiffs' case to support a finding of contributory negligence, such finding could be made, if at all, only on evidence offered by defendant. On this issue the jury resolved the conflict of testimony by accepting plaintiffs' evidence and rejecting defendant's testimony tending to show contributory negligence The jury's finding and its adoption

312

of plaintiffs' version of the occurrence rather than defendant's, is supported by credible testimony

We carefully considered the oral argument and written briefs submitted, and reviewed the charge of the trial court and the record, and we are of the opinion that there is sufficient competent evidence to support the jury's findings, that the questions of defendant's negligence, its exculpation of negligence, plaintiffs' freedom from contributory negligence, as well as all other issues involved, were properly submitted to the jury. The charge correctly stated the applicable principles of law to the issues to be decided by the jury. In the light of the controlling authorities and the evidence, we cannot say that the jury's determination was unwarranted or capricious, hence our order refusing motions for new trial and judgment non obstante veredicto.